COMMONWEALTH OF MASSACHUSETTS
SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT

WORCESTER, SS.                                    CIVIL ACTION NO. 03-2519C

ELIZABETH R. STEFFENBERG,                )
     Plaintiff,                                      )
                                 )
v.                                       )
                                 )
T. GENE GILMAN, STEVEN GILMAN,            )
THE GILMAN INSURANCE                      )
AGENCY, INC., DAVID M. SCOLL,             )
ARBOR SECURITIES, LTD.,                   )
ALLIANCE INVESTMENT                       )
MANAGEMENT, COMMONWEALTH                  )      PLAINTIFF'S SECOND AMENDED
FINANCIAL HOLDINGS INC.,                  )      VERIFIED COMPLAINT
FINANCIAL LINKS, INC.,                    )
T. GILMAN & CO., LTD.,                    )
FIRST ALLIED SECURITIES, INC.,            )
PENSON FINANCIAL SERVICES, INC.,          )
AVIVA LIFE INSURANCE COMPANY,             )
TRADETEK, LTD., TRADETEK, LLC,            )
and IVY HELIX, LLC,                       )
     Defendants.                                    )

FILED

MAY 0 3 2004

ATTEST:

CLERK

## PARTIES

1.    Plaintiff Elizabeth R. Steffenberg ("Mrs. Steffenberg") is an individual residing in Worcester, Massachusetts.

2.    Defendant T. Gene Gilman ("Gene Gilman") is an individual residing at 11 Morse Road, Newtonville, Massachusetts.

3.    Defendant Steven Gilman ("Steven Gilman") is an individual residing at 11 Morse Road, Newtonville, Massachusetts.

4.    Defendant Gilman Insurance Agency, Inc. ("Gilman Insurance Agency") is a Massachusetts corporation engaged in the sale of insurance located in Needham, Massachusetts.

5.    Defendant David M. Scoll ("Attorney Scoll") is an attorney licensed to practice law in Massachusetts with an office at 580 Washington Street, Newton, Massachusetts.

6.    Defendant Arbor Securities, Ltd. ("Arbor Securities") holds itself out as an investment management company.  Upon information and belief, Gene Gilman is the only representative of Arbor Securities and is its resident agent.  All dealings or contacts purportedly made to or with Arbor Securities by the Steffenbergs were only made through Gene Gilman.

7.    Defendant    Alliance    Investment    Management    ("Alliance    Investment Management") is a financial services company located in the Bahamas.

8.    Defendant Commonwealth Financial Holdings, Inc. ("Commonwealth Financial Holdings") is a corporation with a principal place of business at 200 Reservoir Street, Needham, Massachusetts.

9.    Defendant Financial Links, Inc. ("Financial Links") is a North Carolina corporation with a principal place of business at 200 Reservoir Road, Suite 200, Needham Heights, Massachusetts.

10.    Defendant T. Gilman & Co., Ltd. is a Massachusetts corporation with a principal place of business at 223 Needham Street, Suite 300, Newton, Massachusetts.

11.    Defendant First Allied Securities, Inc. ("First Allied Securities") is a New York corporation with a principal place of business at 525 B Street, 17th Floor, San Diego, California.

12.    Defendant Penson Financial Services, Inc. ("Penson Financial Services") is a North Carolina corporation with a principal place of business at 1700 Pacific Avenue, Suite 1400, Dallas, Texas.

13.    Defendant Aviva Life Insurance Company ("Aviva Life") is a Delaware corporation with a place of business at 108 Myrtle Street, North Quincy, Massachusetts.

14.    Defendant TradeTek, Ltd. ("TradeTek, Ltd.") is a Delaware corporation engaged in developing direct access trading software with a principal place of business at 1209 Orange Street, Wilmington, Delaware and a Massachusetts office at 200 Reservoir Street, Suite 200, Needham, Massachusetts.

15.    Defendant TradeTek, LLC ("TradeTek, LLC") is a Nevada limited liability corporation with offices at 200 Reservoir Street, Needham, Massachusetts. Gene Gilman is a manager of TradeTek, LLC and maintains offices at the location of its resident agent, David Gelfond, at 18 Crawford Street, Needham, Massachusetts (TradeTek, Ltd. and TradeTek, LLC will be collectively referred to herein as "TradeTek".)

16.    Defendant Ivy Helix, LLC ("Ivy Helix") is a Massachusetts corporation engaged in developing software for the financial services industry with a principal place of business at 11 Morse Road, Newton, Massachusetts.

## FACTS

17.    Mrs. Steffenberg and her now deceased husband, Arthur J. Steffenberg (collectively referred to herein as the "Steffenbergs"), an elderly, retired couple, retained T. Gene Gilman and T. Gilman & Co. to provide them with investment advice and financial planning services.

18.    The Steffenbergs had little prior investment experience and, over a period of years, they developed a relationship of deep trust and confidence with Gene Gilman such that they entrusted him with complete discretion and control over their investment portfolio. Their investment portfolio comprised their entire retirement savings.

19.    In or about September, 1994, Gene Gilman performed an investment summary and analysis of the Steffenbergs' investments. (See true and accurate copy of Steffenberg investment summary provided by T. Gilman & Co. attached hereto as Exhibit A.)

20.    At that time, the Steffenbergs' assets with Gilman were worth approximately $1.109 million and their portfolio reflected their investment goals and objectives: safe, conservative investments which would generate income with which the couple could live through their retirement years.

21.    During the time that Gene Gilman provided investment advice to the Steffenbergs, he was a registered broker with First Allied Securities, Gilman Insurance Agency, and Financial Links.

22.    Upon information and belief, commencing in or about 1999, Gene Gilman began to divert monies from the investment accounts of the Steffenbergs and his other clients to Arbor Securities, an offshore entity located in the Bahamas. (See June 22, 1999 Steffenberg Portfolio Review attached hereto as Exhibit B.) At no time did Gene Gilman inform the Steffenbergs that their money was being invested overseas. Upon information and belief, over the following several years, Gene Gilman transferred the Steffenbergs' funds from Arbor Securities to TradeTek, a corporation he owns and for which he serves as president, treasurer and registered agent. At no time did Gene Gilman advise the Steffenbergs that their money was being invested in TradeTek.

23.    Upon information and belief, Gene Gilman used a variety of entities to perpetrate the diversion of his clients' account monies to Arbor Securities and TradeTek, including but not limited to Financial Links, Commonwealth Financial Holdings, Alliance Investment

Management, Gilman Insurance Agency, T. Gilman Co., Edgewater Securities, LLC and The Leeward Financial Group.

24.    Upon information and belief, Gene Gilman directed other individuals to assist in the diversion of his clients' investment accounts to Arbor Securities and TradeTek, including his son, Steven Gilman; Laura E. Palumbo and Robert L. Brumbaugh at Financial Links; John D. Bellinger at Edgewater Securities, LLC; and Kerri Helliwell at T. Gilman Co.

25.    Upon information and belief, Gene Gilman directed the diversion of his clients' investment accounts, including the Steffenbergs', while he was associated as a broker with First Affiliated Securities, First Allied Securities, Gilman Insurance Agency, Financial Links, and Penson Financial Services, and an agent with Aviva Life.

26.    Upon information and belief, in order to deceive his clients, including the Steffenbergs, into believing that they had legitimate investments, Gene Gilman created and sent them fictitious monthly investment statements.

27.    Upon information and belief, to prevent his clients, including the Steffenbergs, from learning that their investments had been diverted to an offshore account and, ultimately, TradeTek, Gene Gilman sent them monthly checks which purportedly represented dividends from their investments.

28.    Upon information and belief, in or about August, 2003, Gene Gilman created and sent a fictitious net worth statement to the Steffenbergs reflecting almost $1.9 million in assets, $484,000.00 of which was purportedly held at Arbor Securities.  (See August 26, 2003 Net Worth Statement attached hereto as Exhibit C.)

29.    Subsequently, upon information and belief, Gene Gilman continued to prey on the Steffenbergs by persuading them to liquidate two Certificates of Deposit worth $252,355.74 and

to transfer the proceeds to him, claiming he would invest the proceeds for them. Instead, upon information and belief, Gene Gilman caused the proceeds to be transferred to Arbor Securities and, ultimately, TradeTek.

30.     Upon information and belief, shortly after the death of Mr. Steffenberg in late August, 2003, Gene Gilman persuaded an emotionally and mentally fragile Mrs. Steffenberg to transfer the proceeds of Mr. Steffenberg's life insurance policy, worth approximately $220,000, to Arbor Securities, claiming that he would invest the funds for her. Upon information and belief, these proceeds were ultimately diverted to TradeTek.

31.     On or about October 31, 2003, Mrs. Steffenberg learned that she had been defrauded of her and her husband's entire life savings by Gene Gilman and the various entities and individuals with whom he had been working when she received her monthly statement from Financial Links which reflected a remaining balance in her investment accounts of $4,014.06.

**COUNT I**
**(Breach of Contract v. T. Gene Gilman and Gilman Insurance Agency)**

32.     Mrs. Steffenberg repeats and realleges the allegations contained in paragraphs 1 through 31 as if fully set forth herein.

33.     From February 1997 to July 1997, Gene Gilman was employed by the Gilman Insurance Agency.

34.     In or around October 1995, the Steffenbergs loaned Gene Gilman and the Gilman Insurance Agency the total sum of $100,000.00.

35.     Gilman Insurance Agency and Gene Gilman agreed to pay interest on the amount of the loan in the amount of fifteen (15%) percent per annum and to repay all principal and interest on or before December 31, 1997.

36.     Gilman Insurance Agency and Gene Gilman agreed to waive a Demand, Presentment, Notice, and any and all defenses related to the loan.

37.     Gilman Insurance Agency and Gene Gilman agreed to pay all costs, including reasonable attorney's fees, incurred in connection with collecting the loan.

38.     Gilman Insurance Agency and Gene Gilman have failed to pay the amounts due on the loan and is therefore in default.

### COUNT II
### (Breach of Fiduciary Duty v. David M. Scoll)

39.     Mrs. Steffenberg repeats and realleges the allegations contained in paragraph 1 through 38 as if fully set forth herein.

40.     Attorney Scoll was the Steffenbergs' personal attorney for a number of years. In that capacity, he also served as Trustee of the Steffenbergs' Insurance Trust u/d/t November 28, 1995 (the "Trust").

41.     In or about October 3, 2003, Mrs. Steffenberg gave Attorney Scoll power of attorney over her affairs in the event of her incapacity.

42.     As the Steffenbergs' counsel, Trustee of their Trust and attorney-in-fact in the event of Mrs. Steffenberg's incapacity, Attorney Scoll owed a fiduciary duty to Mrs. Steffenberg to exercise reasonable and prudent judgment and to act at all times in good faith toward the Steffenbergs.

43.     Upon information and belief, at the same time that Attorney Scoll owed a fiduciary duty to Mrs. Steffenberg in his capacities as her counsel and Trustee of the Trust, he handled the legal matters for Gene Gilman and TradeTek.

44.     Upon information and belief, at the same time that Attorney Scoll owed a fiduciary duty to Mrs. Steffenberg in his capacities as her counsel, Trustee of the Trust and

attorney-in-fact in the event of Mrs. Steffenberg's incapacity, Attorney Scoll was counsel to Gene Gilman.

45.    Attorney Scoll breached his fiduciary duty to Mrs. Steffenberg because, due to his involvement with TradeTek, he knew, or upon reasonable investigation should have known, that TradeTek's operations were being financed by the Steffenberg's investments without their knowledge or authorization.

46.    Attorney Scoll breached his fiduciary duty to Mrs. Steffenberg by simultaneously serving as counsel to the Steffenbergs, Trustee of the Steffenbergs' Trust, attorney-in-fact in the event of Mrs. Steffenberg's incapacity and handling the legal affairs of TradeTek and serving as counsel for Gene Gilman.

47.    As a result of Attorney Scoll's conduct, Mrs. Steffenberg has been harmed in an amount to be determined at trial.

### COUNT III
### (Negligence v. David M. Scoll)

48.    Mrs. Steffenberg repeats and realleges the allegations contained in Paragraphs 1 through 47 as if fully set forth herein.

49.    Attorney Scoll owed Mrs. Steffenberg a duty to exercise reasonable care in his capacity as counsel to the Steffenbergs, Trustee of the Trust and attorney-in-fact in the event of Mrs. Steffenberg's incapacity.

50.    Attorney Scoll breached his duty to Mrs. Steffenberg by simultaneously serving as counsel to the Steffenbergs, Trustee of the Steffenbergs' Trust, attorney-in-fact in the event of Mrs. Steffenberg's incapacity and handling the legal affairs of TradeTek and serving as counsel for Gene Gilman.

51.    Attorney Scoll breached his duty to Mrs. Steffenberg because, upon reasonable investigation, he should have known of Gilman's conduct which is more fully described above.

52.    As a result of Attorney Scoll's conduct, Mrs. Steffenberg has been harmed in an amount to be determined at trial.

### COUNT IV
### (Breach of Contract v. David M. Scoll)

53.    Mrs. Steffenberg repeats and realleges the allegations contained in Paragraphs 1 through 52 as though fully set forth herein.

54.    Mrs. Steffenberg and Attorney Scoll had an agreement whereby Attorney Scoll was to exercise reasonable and prudent judgment and to act at all times in good faith in his capacities as counsel to the Steffenbergs, Trustee for the Trust and attorney-in-fact in the event of Mrs. Steffenberg's incapacity.

55.    By the conduct more fully described above, Attorney Scoll breached his agreement with Mrs. Steffenberg.

56.    As a result of these breaches, Mrs. Steffenberg has been damaged in an amount to be determined at trial.

### COUNT V
### (Fraud/Intentional Misrepresentation v. T. Gene Gilman, Steven Gilman, Financial Links, Inc., Commonwealth Financial Holdings, Inc., The Gilman Insurance Agency, T. Gilman & Co., Ltd., Arbor Securities, Ltd., Alliance Investment Management, First Allied Securities, Inc., Penson Financial Services, Inc. and Aviva Life Insurance Company)

57.    Mrs. Steffenberg repeats and realleges the allegations contained in Paragraphs 1 through 56 as if fully set forth herein.

58.    Upon information and belief, Defendants, while operating under the auspices of First Allied Securities, Penson Financial Services and Aviva Life, fraudulently diverted over $1

million of the Steffenbergs' investment monies to an offshore entity, Arbor Securities and, ultimately, TradeTek.

59.    Upon information and belief, Defendants, while operating under the auspices of First Allied Securities, Penson Financial Services and Aviva Life, provided false investment account statements, portfolio reviews and net worth statements to the Steffenbergs to cover the fraudulent diversion of the Steffenbergs' investments to Arbor Securities, and, ultimately, TradeTek.

60.    Upon information and belief, in order to prevent their clients from learning that their investments had been diverted to an offshore account and to TradeTek, Defendants sent, while operating under the auspices First Allied Securities, Penson Financial Services and Aviva Life, monthly checks which purportedly represented dividends from their clients' investments.

61.    Upon information and belief, Defendants knew that these statements and reviews were false and that the checks were not actually representative of investment dividends, yet the documents were created and the checks sent to induce the Steffenbergs into believing that their investments were intact and being managed in accordance with the Steffenbergs' investment goals and objectives.

62.    The Steffenbergs reasonably relied upon Defendants' false statements in making their investment decisions.

63.    As a result of Defendants' conduct, Mrs. Steffenberg has been harmed in an amount to be determined at trial.

## COUNT VI

**(Negligent Misrepresentation v. T. Gene Gilman, Steven Gilman, Financial Links, Inc.,
Commonwealth Financial Holdings, Inc., The Gilman Insurance Agency, T. Gilman & Co.,
Ltd., Arbor Securities, Ltd., Alliance Investment Management, First Allied Securities, Inc.,
Penson Financial Services, Inc. and Aviva Life Insurance Company)**

64.    Mrs. Steffenberg repeats and realleges the allegations contained in Paragraphs 1
through 63 as if fully set forth herein.

65.    Upon information and belief, Defendants, while operating under the auspices of
First Allied Securities, Penson Financial Services and Aviva Life, diverted over $1 million of the
Steffenbergs' investment monies to an offshore entity, Arbor Securities and, ultimately,
TradeTek.

66.    Upon information and belief, Defendants, while operating under the auspices of
First Allied Securities, Penson Financial Services, and Aviva Life, provided investment account
statements, portfolio reviews and net worth statements to the Steffenbergs which Defendants
knew, or should have known, were false in order to cover the fraudulent diversion of the
Steffenbergs' investments to Arbor Securities and TradeTek.

67.    Upon information and belief, in order to prevent their clients from learning that
their investments had been diverted to an offshore account and to TradeTek, Defendants sent,
while operating under the auspices of First Allied Securities, Penson Financial Services and
Aviva Life, monthly checks which purportedly represented dividends from their clients'
investments.

68.    Upon information and belief, Defendants knew, or upon reasonable investigation
should have known, that these statements and reviews were false and that the checks were not
actually representative of investment dividends.

69.    Upon information and belief, Defendants knew, or upon reasonable investigation should have known, that the documents were falsified and that the checks were sent to induce the Steffenbergs into believing that their investments were intact and being managed in accordance with their investment goals and objectives.

70.    The Steffenbergs reasonably relied upon Defendants' false statements in making their investment decisions.

71.    As a result of Defendants' conduct, Mrs. Steffenberg has been harmed in an amount to be determined at trial.

## COUNT VII
**(Breach of Fiduciary Duty v. T. Gene Gilman, Steven Gilman, Financial Links, Inc., Commonwealth Financial Holdings, Inc., The Gilman Insurance Agency, T. Gilman & Co., Ltd., Arbor Securities, Ltd., Alliance Investment Management, First Allied Securities, Inc. and Penson Financial Services, Inc.)**

72.    Mrs. Steffenberg repeats and realleges the allegations contained in Paragraphs 1 through 71 as if fully set forth herein.

73.    Defendants, as the Steffenbergs' investment advisors, owed the Steffenbergs a fiduciary duty to exercise reasonable and prudent business judgment and to act at all times in good faith toward the Steffenbergs.

74.    Defendants, through their actions set forth above, breached their respective duties to the Steffenbergs.

75.    As a result of Defendants' conduct, Mrs. Steffenberg has suffered and continues to suffer substantial harm and damages.

## COUNT VIII
**(Negligence v. T. Gene Gilman, Steven Gilman, Financial Links, Inc., Commonwealth Financial Holdings, Inc., The Gilman Insurance Agency, T. Gilman & Co., Ltd., Arbor Securities, Ltd., Alliance Investment Management, First Allied Securities, Inc., Penson Financial Services, Inc. and Aviva Life Insurance Company)**

76.    Mrs. Steffenberg repeats and realleges the allegations contained in Paragraphs 1 through 75 as if fully set forth herein.

77.    Defendants owed Mrs. Steffenberg a duty to exercise reasonable care in the handling of the Steffenbergs' investment accounts.

78.    Defendants breached this duty by, upon information and belief, diverting Mrs. Steffenberg's investment monies to Arbor Securities and TradeTek, providing investment account statements, portfolio reviews and net worth statements which were false or which, upon reasonable investigation by Defendants would prove to be false, to the Steffenbergs to cover Defendants' fraudulent diversion of the Steffenbergs' investments to Arbor Securities, and, ultimately, TradeTek. Upon information and belief, Defendants' conduct occurred while they were operating under the auspices of First Allied Securities, Penson Financial Services and Aviva Life.

79.    Defendants breached their duty to Mrs. Steffenberg by, upon information and belief, sending monthly checks which purportedly represented dividends from their clients' accounts in order to prevent their clients from learning that their investments had been diverted to an offshore account and to TradeTek. Upon information and belief, Defendants' conduct occurred while they were operating under the auspices of First Allied Securities, Penson Financial Services and Aviva Life.

80.    As a result of Defendants' conduct, Mrs. Steffenberg has been harmed in an amount to be determined at trial.

## COUNT IX
**(Breach of Contract v. T. Gene Gilman, Steven Gilman, Financial Links, Inc., Commonwealth Financial Holdings, Inc., The Gilman Insurance Agency, T. Gilman & Co., Ltd., Arbor Securities, Ltd., Alliance Investment Management, First Affiliated Securities, First Allied Securities, Inc., Penson Financial Services, Inc. and Aviva Life Insurance Company)**

81.    Mrs. Steffenberg repeats and realleges the allegations contained in Paragraphs 1 through 80 as though fully set forth herein.

82.    Mrs. Steffenberg and Defendants had an agreement by which Mrs. Steffenberg's investments were to be handled in a prudent and professional manner and in accordance with the Steffenbergs' personal investment goals and objectives.

83.    Defendants breached their agreement with Mrs. Steffenberg by, upon information and belief providing false investment account statements, portfolio reviews and net worth statements to the Steffenbergs to cover their fraudulent diversion of the Steffenbergs' investments to Arbor Securities, and, ultimately, TradeTek.  Upon information and belief, Defendants' conduct occurred while they were operating under the auspices of First Allied Securities, Penson Financial Services and Aviva Life.

84.    Defendants breached their agreement with Mrs. Steffenberg by, upon information and belief, sending monthly checks in varying amounts which purportedly represented dividends from their clients' accounts in order to prevent their clients from learning that their investments had been diverted to an offshore account and to TradeTek.  Upon information and belief, Defendants' conduct occurred while they were operating under the auspices of First Allied Securities, Penson Financial Services and Aviva Life.

85.    As a result of these breaches, Mrs. Steffenberg has been damaged in an amount to be determined at trial.

## COUNT X
**(Conversion v. T. Gene Gilman, Steven Gilman, Financial Links, Inc., Commonwealth Financial Holdings, Inc., The Gilman Insurance Agency, T. Gilman & Co., Ltd., Arbor Securities, Ltd., Alliance Investment Management, First Allied Securities, Inc., Penson Financial Services, Inc. and Aviva Life Insurance Company)**

86. Mrs. Steffenberg repeats and realleges the allegations contained in Paragraphs 1 through 85 as if fully set forth herein.

87. By the conduct more fully described herein, Defendants have converted Mrs. Steffenberg's investments for their own purposes and use. Specifically, Defendants have possession of and refuse to transfer back to Mrs. Steffenberg her investment monies, worth in excess of $1 million.

88. Defendants have no right to retain Mrs. Steffenberg's investment monies and their retention of said monies following Mrs. Steffenberg's demand for the same is unlawful and constitutes conversion.

89. As a result of Defendants' conversion, Mrs. Steffenberg has suffered damages in an amount to be determined at trial.

## COUNT XI
**(Civil RICO v. T. Gene Gilman, Steven Gilman, Financial Links, Inc., Commonwealth Financial Holdings, Inc., The Gilman Insurance Agency, T. Gilman & Co., Ltd., Arbor Securities, Ltd., and Alliance Investment Management, First Allied Securities, Inc., Penson Financial Services, Inc. and Aviva Life Insurance Company)**

90. Mrs. Steffenberg repeats and realleges the allegations contained in Paragraphs 1 through 89 as if fully set forth herein.

91. Mrs. Steffenberg and Defendants are persons within the meaning of the 18 U.S.C. § 1961 at et. seq.

92.    Upon information and belief, Defendants used or invested the Steffenbergs' investment monies in the acquisition, establishment and operation of Financial Links (the "Enterprise").

93.    The Enterprise was engaged in interstate commerce as defined by in 18 U.S.C. § 1962 (a).

94.    Upon information and belief, through a pattern of racketeering activity, Defendants derived income by engaging in the following activities:

(a)    Defendants willfully and knowingly engaged in a scheme to divert their clients', including Mrs. Steffenberg, investments to Arbor Securities and TradeTek using the United States Postal Service by mailing, or by causing to be mailed to them (i) false investment account, net worth and portfolio review statements; and (ii) checks purporting to be dividends from investment accounts;

(b)    Defendants willfully and knowingly used wires to, among other things, divert Mr. Steffenberg's life insurance proceeds and the Steffenbergs' Certificate of Deposit proceeds to Arbor Securities and TradeTek; and

(c)    Defendants violated the Securities and Exchange Act of 1934 and Massachusetts General Laws Chapter 110A by (i) falsifying their clients', including Mrs. Steffenberg, investment account, net worth and portfolio review statements; (ii) sending checks which purported to be dividends from investment accounts; and (iii) diverting their investments to Arbor Securities and TradeTek. Defendants' victims, including Mrs. Steffenberg, relied on Defendants' representations in making their investment decisions.

95.    Upon information and belief, some part of the income derived from Defendants' conduct as described above was used in acquiring an interest in or operating Financial Links.

96.    Defendants have conspired to violate 18 U.S.C. §1962(a) (b) and (c) in violation of 18 U.S.C. §1962(d).

97.    Pursuant to 18 U.S.C. §1964 (a), Defendants should be enjoined from such unlawful activity.

98.    Pursuant to 18 U.S.C. 1964(c), Mrs. Steffenberg has been damaged by the conduct described above and seeks recovery of treble damages plus costs, including reasonable attorneys' fees.

## COUNT XII
**(G. L. c. 93A, § 11 v. T. Gene Gilman, Steven Gilman, Financial Links, Inc., Commonwealth Financial Holdings, Inc., The Gilman Insurance Agency, T. Gilman & Co., Ltd., Arbor Securities, Ltd., and Alliance Investment Management, First Allied Securities, Inc., Penson Financial Services, Inc. and Aviva Life Insurance Company)**

99.    Mrs. Steffenberg repeats and realleges the allegations contained in Paragraphs 1 through 98 as if fully set forth herein.

100.    At all times material hereto, Defendants were engaged in the conduct of trade or commerce within the Commonwealth of Massachusetts.

101.    Defendants' diversion of Mrs. Steffenberg's investments to Arbor Securities and TradeTek constitutes an unfair and deceptive trade practice and a willful and knowing violation of Massachusetts General Laws Chapter 93A.

102.    Defendants' conduct as aforesaid occurred primarily and substantially in the Commonwealth of Massachusetts.

103.    As a result of Defendants' conduct, Mrs. Steffenberg has suffered a loss of money in an amount to be determined at trial.

## COUNT XIII
**(Negligent Supervision v. Financial Links, Inc., First Allied Securities, Inc., Penson Financial Services, Inc. and Aviva Life Insurance Company)**

104.    Mrs. Steffenberg repeats and realleges the allegations contained in Paragraphs 1 through 103 as if fully set forth herein.

105.    Defendants owed Mrs. Steffenberg a duty to supervise Gene Gilman in the conduct of his investment and insurance businesses.

106.    Gene Gilman's conduct, as described above, and Defendants' failure to supervise him, has caused and will continue to cause harm to Mrs. Steffenberg in an amount to be determined at trial.

## COUNT XIV
**(Constructive Trust v. TradeTek, Ltd., TradeTek, LLC, and Ivy Helix, LLC)**

107.    Mrs. Steffenberg repeats and realleges the allegations contained in Paragraphs 1 through 106 as if fully set forth herein.

108.    Upon information and belief, Gene Gilman violated his fiduciary and contractual duties by diverting Mrs. Steffenberg's investment monies to Arbor Securities and, ultimately, TradeTek, in order to finance TradeTek's operations.

109.    Upon information and belief, Gene Gilman has sold and/or otherwise conveyed, or intends to sell and/or otherwise convey, the assets of TradeTek to Ivy Helix, a limited liability company recently formed by Diane Gilman, Gene Gilman's wife, and William Gilman, in order to prevent the attachment of TradeTek's assets by Gene Gilman's creditors or victims.

110.    Upon information and belief, TradeTek and/or Ivy Helix have been unjustly enriched at the expense of Mrs. Steffenberg and Gene Gilman's other clients as the proceeds of Mrs. Steffenberg's investments were diverted to TradeTek and/or Ivy Helix by Gene Gilman.

111.    Mrs. Steffenberg seeks injunctive relief prohibiting TradeTek and Ivy Helix from disbursing, alienating, or encumbering any of their assets and ordering TradeTek and Ivy Helix to hold said assets in constructive trust to satisfy any judgment Mrs. Steffenberg may obtain in this matter.

**WHEREFORE**, Elizabeth R. Steffenberg respectfully requests that this Court:

(I)     On Count I, enter judgment for Mrs. Steffenberg on her breach of contract claim against The Gilman Insurance Agency, Inc. and T. Gene Gilman;

(II)    On Count II, enter judgment for Mrs. Steffenberg on her breach of fiduciary duty against David M. Scoll;

(III)   On Count III, enter judgment for Mrs. Steffenberg on her negligence claim against David M. Scoll;

(IV)    On Count IV, enter judgment for Mrs. Steffenberg on her breach of contract claim against David M. Scoll;

(V)     On Count V, enter judgment for Mrs. Steffenberg on her fraud/intentional misrepresentation claim against T. Gene Gilman, Steven Gilman, Financial Links, Inc., Commonwealth Financial Holdings, Inc., The Gilman Insurance Agency, T. Gilman & Co., Ltd., Arbor Securities, Ltd., Alliance Investment Management, First Allied Securities, Inc., Penson Financial Services, Inc. and Aviva Life Insurance Company;

(VI)    On Count VI, enter judgment for Mrs. Steffenberg on her negligent misrepresentation claim against T. Gene Gilman, Steven Gilman, Financial Links, Inc., Commonwealth Financial Holdings, Inc., The Gilman Insurance Agency, T. Gilman & Co., Ltd., Arbor Securities, Ltd., Alliance Investment Management, First Allied Securities, Inc., Penson Financial Services, Inc. and Aviva Life Insurance Company;

(VII)   On Count VII, enter judgment for Mrs. Steffenberg on her breach of fiduciary duty claim against T. Gene Gilman, Steven Gilman, Financial Links, Inc., Commonwealth Financial Holdings, Inc., The Gilman Insurance Agency, T. Gilman & Co., Ltd., Arbor Securities, Ltd., Alliance Investment Management, First Allied Securities, Inc. and Penson Financial Services, Inc.;

(VIII)  On Count VIII, enter judgment for Mrs. Steffenberg on her negligence claim against T. Gene Gilman, Steven Gilman, Financial Links, Inc., Commonwealth Financial Holdings, Inc., The Gilman Insurance Agency, T. Gilman & Co., Ltd.,

Arbor Securities, Ltd., Alliance Investment Management, First Allied Securities, Inc., Penson Financial Services, Inc. and Aviva Life Insurance Company;

(IX)    On Count IX, enter judgment for Mrs. Steffenberg on her breach of contract claim against T. Gene Gilman, Steven Gilman, Financial Links, Inc., Commonwealth Financial Holdings, Inc., The Gilman Insurance Agency, T. Gilman & Co., Ltd., Arbor Securities, Ltd., Alliance Investment Management, First Allied Securities, Inc., Penson Financial Services, Inc. and Aviva Life Insurance Company;

(X)    On Count X, enter judgment for Mrs. Steffenberg on her conversion claim against T. Gene Gilman, Steven Gilman, Financial Links, Inc., Commonwealth Financial Holdings, Inc., The Gilman Insurance Agency, T. Gilman & Co., Ltd., Arbor Securities, Ltd., Alliance Investment Management, First Allied Securities, Inc., Penson Financial Services, Inc. and Aviva Life Insurance Company;

(XI)    On Count XI,

    (A)    Enter judgment for Mrs. Steffenberg on her Civil RICO claim against T. Gene Gilman, Steven Gilman, Financial Links, Inc., Commonwealth Financial Holdings, Inc., The Gilman Insurance Agency, T. Gilman & Co., Ltd., Arbor Securities, Ltd., Alliance Investment Management, First Allied Securities, Inc., Penson Financial Services, Inc. and Aviva Life Insurance Company;

    (B)    Award Mrs. Steffenberg treble damages, costs and attorney's fees;

(XII)    On Count XII,

    (A)    Enter judgment for Mrs. Steffenberg on her G. L. c. 93A, § 11 claim against T. Gene Gilman, Steven Gilman, Financial Links, Inc., Commonwealth Financial Holdings, Inc., The Gilman Insurance Agency, T. Gilman & Co., Ltd., Arbor Securities, Ltd., Alliance Investment Management, First Allied Securities, Inc., Penson Financial Services, Inc. and Aviva Life Insurance Company;

    (B)    Award Mrs. Steffenberg treble damages, costs and attorney's fees;

(XIII)    On Count XIII, enter judgment for Mrs. Steffenberg on her negligent supervision claim against Financial Links, Inc., First Allied Securities, Penson Financial Services, Inc. and Aviva Life Insurance Company;

(XIV)    On Count XIV,

    (A)    Enter judgment for Mrs. Steffenberg on her constructive trust claim against TradeTek, Ltd., TradeTek, LLC and Ivy Helix, LLC;

(B)    Issue a temporary restraining order followed by a preliminary injunction prohibiting TradeTek, Ltd., TradeTek, LLC and Ivy Helix, LLC from disbursing, alienating or encumbering any of their assets and further order that said assets be held by Defendants in constructive trust to satisfy any judgment Mrs. Steffenberg may obtain in this matter; and

(XV)   Grant such further relief as this Court deems just and proper, including, but not limited to, interest, costs and attorney's fees.

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL CLAIMS SO TRIABLE.**

ELIZABETH R. STEFFENBERG,
By Her Attorneys,

Louis M. Ciavarra, Esquire (BBO #546481)
Christine S. Collins, Esquire (BBO #639293)
Bowditch & Dewey, LLP
311 Main Street
P.O. Box 15156
Worcester, MA  01615-0156
(508) 926-3441
Dated: April 23, 2004                                    (508) 929-3041

## CERTIFICATE OF SERVICE

I, Christine S. Collins, hereby certify that I have this 23rd day of April, 2004 served the foregoing by mailing copy thereof, via first class mail, postage prepaid, to all parties and counsel of record.

Christine S. Collins

A true copy by photostatic process
Attest:
Asst. Clerk

## VERIFICATION

I, Elizabeth R. Steffenberg, on oath depose and state that I have read the factual allegations above, and the facts stated therein and below are true based upon my personal knowledge, except where stated upon information and belief, which facts I believe to be true.

Signed under the pains and penalties of perjury this *12th* day of April 2004.

*Elizabeth R. Steffenberg*
Elizabeth R. Steffenberg