UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION

CIVIL ACTION NO.: 04-40113-FDS

ELIZABETH R. STEFFENBERG,  )   (Christine S. Collins BBO#639293)
                           )
     Plaintiff,            )
                           )
v.                         )
                           )
T. GENE GILMAN, STEVEN GILMAN, )
THE GILMAN INSURANCE       )
AGENCY, INC., DAVID M. SCOLL, )
ARBOR SECURITIES, LTD.,    )
ALLIANCE INVESTMENT        )
MANAGEMENT, COMMONWEALTH   )
FINANCIAL HOLDINGS INC.,   )
FINANCIAL LINKS, INC.,     )
T. GILMAN & CO., LTD.,     )
AVIVA LIFE INSURANCE COMPANY, )
TRADETEK, LTD., and        )
TRADETEK, LLC,             )
                           )
     Defendants.           )

**MEMORANDUM IN SUPPORT OF THE MOTION FOR RECONSIDERATION OF PLAINTIFF, ELIZABETH R. STEFFENBERG, OF THE ORDER DENYING HER MOTION TO COMPEL RESPONSES OF DAVID M. SCOLL TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS**

Plaintiff, Elizabeth R. Steffenberg, ("Ms. Steffenberg") hereby submits this Memorandum in Support of her Motion for Reconsideration of Magistrate Judge Swartwood's Order denying her Motion to Compel Responses of David M. Scoll to Plaintiff's First Request for Production of Documents, dated December 28, 2004 (the "Order"). The Court erroneously interpreted and applied both Massachusetts law concerning the attorney-client privilege, and federal law pertaining to the scope of the protections provided by the "ordinary" work product and "opinion" work product

doctrines in failing to require Defendant, David M. Scoll ("Scoll"), to produce the documents in his possession that are responsive to Ms. Steffenberg's Document Request Nos. 19-32, 34-35 and 38-39 in her First Request for Production of Documents. Scoll has asserted privileges on behalf of his former clients, Defendant, T. Gene Gilman ("Gilman"); Gilman's son, Defendant, Steven Gilman; and numerous corporate Defendants owned and/or operated by Gilman, The Gilman Insurance Agency, Arbor Securities, Ltd., Commonwealth Financial Holdings, Inc., Financial Links, Inc., TradeTek, LLC and TradeTek, Ltd. (hereinafter collectively referred to as the "Corporate Defendants"). These privileges are truly intended to protect the interests of Scoll's former clients. However, Gilman and the Corporate Defendants have taken no steps to protect their own interests in this case: They have neither asserted their respective privileges in this case, nor have they failed to defend this action in any manner[1]. Scoll is therefore unjustly impeding the legitimate discovery of facts by Ms. Steffenberg and this Court simply to shield himself from liability to Ms. Steffenberg. This is fundamentally contrary to the purpose of the privileges. As such, Ms. Steffenberg's Motion for Reconsideration should be allowed.

## INTRODUCTION

Ms. Steffenberg filed this action against her former investment advisor, T. Gene Gilman ("Gilman"), his son, Steven Gilman, and numerous corporate entities owned and/or operated by Gilman, Defendants, The Gilman Insurance Agency, Arbor Securities, Ltd., Commonwealth Financial Holdings, Inc., Financial Links, Inc., TradeTek, LLC and

---

[1] On January 10, 2005, this Court entered a Notice of Default as to Defendants, T. Gene Gilman, Steven Gilman, The Gilman Insurance Agency, Inc., Arbor Securities, Ltd., Commonwealth Financial Holdings, Inc., Financial Links, Inc., T. Gilman & Co., Ltd. TradeTek, Ltd., and TradeTek, LLC for failure to plead or otherwise defend this action.

TradeTek, Ltd. (hereinafter collectively referred to as the "Corporate Defendants") to recover approximately $1 million in funds she and her now-deceased husband, Arthur J. Steffenberg, invested with Gilman and the Corporate Defendants. Ms. Steffenberg also sued Scoll, the Steffenbergs' attorney for approximately twelve years, based on his simultaneous representation of the Steffenbergs, Gilman and the Corporate Defendants from July, 1992 to November, 2003 during the same period that Gilman and the Corporate Defendants were handling the Steffenbergs' investments and Scoll was a Director of at least two of the Corporate Defendants. Based upon his involvement with Gilman and the Corporate Defendants, Ms. Steffenberg alleges, Scoll knew or should have known that Gilman and the Corporate Defendants were defrauding the Steffenbergs of their investments.

Ms. Steffenberg submitted her First Request for Production of Documents to Scoll requesting that Scoll produce documents in his possession which, generally, relate to Gilman and the Corporate Defendants (the "Gilman File"). Scoll refused to produce the Gilman File asserting the attorney/client privilege, "joint defense" privilege, and the "work product" and "opinion product" doctrines, and filed a privilege log, a true and accurate copy of which is attached hereto as <u>Exhibit A</u> (the "Privilege Log"). Neither Gilman nor the Corporate Defendants have ever asserted any privileges in this case. Ms. Steffenberg subsequently filed her Motion to Compel requesting that the Court order Scoll to produce the documents itemized in his Privilege Log, which was denied by the Court in its Order.

The Order contains numerous errors of law with respect to its interpretation and application of the attorney-client privileges and work product doctrines. As such, Ms. Steffenberg's Motion for Reconsideration should be allowed.

## ARGUMENT

I. **ATTORNEY-CLIENT PRIVILEGE**

First, the Court failed to hold Scoll to his burden of demonstrating that Gilman has <u>not</u> waived his attorney-client privilege in connection with this case. Moreover, Scoll failed to demonstrate, nor did the Court make any specific finding, that the "common interest" privilege applies to <u>any</u> of the Corporate Defendants and that they have not waived the privilege.

A. **Scoll Did Not Demonstrate Gilman's Non-Waiver Of The Attorney-Client Privilege.**

It is well-established in Massachusetts that the <u>party seeking to assert the privilege</u> bears the burden of demonstrating that the (1) communications were received from the client during the course of the client's effort to obtain legal advice from the attorney; (2) the communications were made in confidence; and (3) <u>the privilege was not waived</u>. <u>In the Matter of the Reorganization</u>, 425 Mass. 419, 421 (1997) (emphasis added), quoting <u>Resolution Trust Corp. v. Dean</u>, 813 F. Supp. 1426, 1428 (D. Ariz. 1993) ("'[i]n order to establish the applicability of the attorney–client privilege to a given communication, the party asserting the privilege must affirmatively demonstrate non-waiver of the privilege'").[2] There is no dispute that Scoll is the party seeking to assert the privilege;

---

[2] It is notable that the attorney-client privilege is construed narrowly in Massachusetts because it runs contrary to interest of full disclosure of relevant information. <u>Comm v. O'Brien</u>, 377 Mass. 772, 775 (1979); <u>see also</u> <u>Sorenson v. H&R Block, Inc.</u>, 2003 WL 21842854 at *2 (D.Mass. 2003) ("If anything, the contemporary trend appears to be in the direction of narrowing the scope of even recognized privileges or obligations of confidentiality when faced with competing social values, as evidenced by recent initiatives with respect to such traditional areas of confidentiality as attorney reporting responsibilities. . .");

therefore, he is <u>required</u> to demonstrate that Gilman and the Corporate Defendants did not waive their respective attorney-client privileges.

The Court improperly imposed the burden of demonstrating non-waiver of the privilege on Ms. Steffenberg. Specifically, the Court found that "[t]he documents protected by the privilege are listed and described as communications that were made while Mr. Gilman was seeking advice from Mr. Scoll pertaining to matters within his competence as a lawyer. The <u>burden then shifts to the Plaintiff to establish an exception to the privilege or to show that the privilege was waived</u>." (See Order, pp. 5-6.) (Emphasis added.) Not only is the Court's burden-shifting plainly contrary to Massachusetts law, the facts are that Scoll adduced absolutely <u>no evidence</u> to demonstrate that Gilman,m. has asserted the privilege on his behalf or on behalf of the Corporate Defendants. Indeed, as the Court stated in its Order, "[t]here is nothing in the record to suggest, nor has either party argued, that Mr. Gilman has communicated to Mr. Scoll concerning this litigation and stated whether he waives his attorney-client privilege." (See Order, p. 6.) Furthermore, as is discussed later, many of the documents contained in the Privilege Log simply do not involve privileged communications, such as the Corporate Defendants' incorporation materials. (See infra, § IIC.) The Court's finding is obviously erroneous, and, as such, the documents designated in the Privilege Log as protected by the attorney-client privilege must be produced.

---

Fleet Nat'l Bank v. Tonneson & Co., 150 F.R.D. 10, 13 (D.Mass. 1993) ("Because the attorney-client privilege can and often does seriously impede the search for truth in a particular case, courts are naturally reluctant to extend it beyond the narrowest limits required to achieve its purpose of fostering effective attorney-client communication.")

B.  **Scoll Failed To Establish The Applicability Of The "Common Interest" Doctrine.**

Furthermore, Scoll's assertion of the common interest, or "joint defense" privilege, and the Court's finding that it was adequate, is clearly insufficient. (See Order at p. 8 n. 5.) In order for the common interest exception to apply under Massachusetts law, "the party asserting the privilege must show that (1) the communications were made in the course of a joint defense effort, (2) the statements were designed to further the effort, and (3) the privilege has not been waived." See Ken's Foods, Inc. v. Ken's Steak House, Inc., 213 F.R.D. 89, 92 (D.Mass. 2002) quoting United States v. Bay State Ambulance and Hosp. Rental Serv. Inc., 874 F.2d 20, 28 (1st Cir. 1989). In his Privilege Log, Scoll made no showing on any of the three prongs of the common interest privilege as to any of the Corporate Defendants.[3] As such, the Court's finding that the documents

---

[3]  Specifically, Scoll has not affirmatively demonstrated, as he is required to do, that the attorney-client or joint defense privilege applies to any of these Defendants: See e.g., Privilege Log:

Steven Gilman: Request No. 26: 8/25/99 through "Undated".

Arbor Securities, Ltd.: Request No. 26: 8/25/99 through "Undated".

Financial Links, Inc.:

*Request No. 28*: 10/10/2000 through "Notes Undated", "Undated . . . Draft Legal Document with Attorney Notes thereon . . . Notes by Attorney Scoll" to last document;

*Request No. 29*: Page 1—10/10/2000 through 8/24/2000; 8/16/1999 through 7/6/1999; "Undated . . . Draft Legal Document with Attorney Notes thereon" to last document; Page 2—7/22/1999 ("Facsimile"), 2/25/1999, 2/5/1999 through last document; Page 3—1/27/1999, 2/1/1999, "Printed on 6/17/04", 3/27/2001 through last document; Page 4—4/6/2000 through "Undated . . . Draft Legal Document with Attorney Notes thereon", "Printed on 6/17/04", "Printed on 11/13/2003";

*Request No. 30*: Page 1--7/22/1999 ("Draft correspondence to client . . ."); Page 2—2/5/1999, 1/27/1999 through 2/1/1999.

Commonwealth Financial Holdings:

*Request No. 29*: Page 1—10/10/2000, 8/16/99 through 7/6/99; Page 3--8/8/02;

*Request No. 35*: Page 1—10/10/2000 through 8/16/2000; 8/8/2002 through 7/6/1999; Page 3—1/27/1999, 2/1/1999, 5/26/2000 through 5/31/2000; Page 4—12/15/2000.

*Request No. 36*: Page 1—10/10/2000, 10/12/2000, 10/6/2000, 8/16/2000, 8/8/2002 through 7/6/1999; Page 2—7/22/1999, 7/2/1999; Page 3—1/27/1999, 2/1/1999; 5/26/2000 through 5/31/2000; Page 4—12/15/2000.

Scoll designated as protected by this privilege in the Privilege Log are non-discoverable is clearly erroneous.

In sum, Scoll's failure to establish the non-waiver of the attorney-client and common interest privileges by Gilman and the Corporate Defendants and the narrow construction given privileges in Massachusetts dooms his assertion of those privileges. Scoll should therefore be required to produce those documents designated as protected by the attorney-client and common interest privilege in the Privilege Log.

## II.   WORK PRODUCT DOCTRINE

### A.   "Ordinary Work Product" and "Opinion Work Product" Doctrine

The Court also failed to properly apply the work product doctrine in its Order because Scoll did not substantiate that the documents he claims are protected by the "ordinary" work product and "opinion" work product doctrine were created in

---

*Request No. 38:* Page 1—10/12/2000, 10/6/20008/8/20020 through 7/6/1999, 7/22/1999; Page 2—7/2/1000, 1/27/1999, 2/1/1999, 12/15/2000.

TradeTek LLC and TradeTek, Ltd.:

*Request No. 31:* Page 1--10/17/2000, 10/10/2000, 10/6/2000, 8/16/2000, "Printed on 11/13/2003", 11/10/2003, 4/27/1999; Page 2--3/11/1999, 8/20/1998, 6/16/1999, 6/30/1999, 6/30/1999, 6/1/1999, 6/10/1999, "Printed on 6/17/04"; Page 3--9/21/2000, 2/4/2000, 2/10/2000, 10/11/1999, 11/15/2000, 10/19/2000, 10/6/1999; Page 4--10/6/1999, 3/1/2000, 3/24/2000, 10/27/2000 ("From Aleke Msumba"), 2/5/2001, 2/5/2001, 10/13/2000, 4/1/1999, 5/1/2001, "Printed on 3/10/04".

*Request No. 32:* Page 1—10/17/2000, 10/10/2000, 10/6/2000, 8/16/2000, 8/8/2002, "Printed on 11/13/2003; Page 2—3/11/1999, 8/20/1998, 6/16/1999, 6/20/1999, 6/20/1999, 6/1/1999, 6/10/1999, 6/10/1999; Page 3—9/21/2000, 2/4/2000, 2/10/2000, 10/11/1999, 11/15/2000, 10/19/2000; Page 4—10/6/1999 through 10/6/1999, 3/1/2000 through 3/24/2000, 10/27/2000, 2/5/2001 through 2/5/2001, 10/13/2000, 5/1/2001; Page 5—"Printed on 3/10/2004".

*Request No. 34:* Page 1—10/6/2000, "Printed on 11/13/2003, 8/20/1998, "Printed on 6/17/04"; Page 2—11/15/2000, "Printed on 3/10/2004".

Gilman Insurance Agency, Inc.: *Request No. 20-22*

T. Gilman & Co., Inc.: *Request Nos. 23-25.*

anticipation of litigation and because Ms. Steffenberg has overcome the "substantial need/undue hardship" exception to the "ordinary" work product doctrine.

The work product doctrine was developed "by balancing the systemic interest in providing lawyers with a 'certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel, . . . against the societal interest in ensuring that the parties obtain '[m]utual knowledge of all the relevant facts gathered. . . .'" In Re San Juan Dupont Plaza Hotel Fire Litigation, 859 F.2d 1007, 1014 (1st Cir. 1988) quoting Hickman v. Taylor, 329 U.S. 495, 507, 510-511, 67 S.Ct. 385, 392-393 (1947) (citations omitted). (Emphasis added). Here, Ms. Steffenberg does not seek information concerning Scoll's trial strategies in unrelated litigation; rather she seeks to recover over $1 million in investments made with Gilman and the Corporate Defendants. In the absence of an assertion of privileges by Gilman and the Corporate Defendants, however, Scoll has asserted the work product doctrine purely to prevent Ms. Steffenberg from obtaining information concerning his former clients' conduct which may, in some way, implicate him. This defies the very purpose of the work product doctrine. As such, the documents Scoll claims are protected as "ordinary" work product must be produced to Ms. Steffenberg.

    1.    "Ordinary Work Product" Standard

Fed. R. Civ. P. 26(b)(3) codifies the "work product" doctrine, and protects the following: (1) a document or tangible thing; (2) which was prepared in anticipation of litigation; and (3) was prepared by or for a party, or by or for a party's representative. See Ferrara & DiMercurio v. St. Paul Mercury Ins. Co., 173 F.R.D. 7, 13 (D.Mass. 1997),

citing <u>Pasteris v. Robillard</u>, 121 F.R.D. 18, 20 (D.Mass. 1988). The burden is on the party asserting the protections of the doctrine--in this case, Scoll--to demonstrate that the requested material constitutes work product.[4] <u>See</u> <u>id.</u> If Scoll meets his burden of proving the applicability of the privilege, then Mrs. Steffenberg must demonstrate that she has a "substantial need" for the information contained in the documents and cannot obtain the equivalent without "undue hardship". <u>See</u> <u>Colonial Gas v. Aetna Cas. & Sur.</u>, 144 F.R.D. at 645; <u>see also</u> <u>In re San Juan Dupont Plaza Fire Litigation</u>, 859 F.2d at 1014-1015. If a party seeking access to documents protected by the work product doctrine successfully establishes the "substantial need/undue hardship" exception to the doctrine, then the party resisting discovery is required to produce its "ordinary" work product created in anticipation of litigation, such as complaints, discovery responses, interview transcripts, surveillance videotapes and studies. <u>See</u> <u>In re San Juan Dupont Plaza Fire Litigation</u>, 859 F.2d at 1017; <u>see also</u> Moore's Federal Practice, Vol. 6, § 26.70[2][b] at p. 210 (3rd Ed.) ("Moore's Federal Practice").

    a.    <u>Scoll Failed To Identify The Purported Litigation Matter(s) Which Form(s) the Basis of His Assertion Of the Work Product Doctrine.</u>

In this case, Scoll did not satisfy the requirements for applicability of the work product doctrine because he failed to provide sufficient detail concerning the "litigation" matter(s) for which he purportedly created the documents he designated as responsive to Ms. Steffenberg's document requests.

---

[4] Scoll has also failed to demonstrate the non-waiver of the work product doctrine by Gilman and the Corporate Defendants.

First, in his Privilege Log, Scoll identifies many of the documents responsive to Document Request Nos. 19[5], 26[6], 31[7], 32[8], and 34[9] as prepared in anticipation of litigation but fails to identify to which, if any[10], particular litigation these documents pertain. Notwithstanding this lack of detail, the Court improperly found these bald assertions of "work product" sufficient to establish that the documents are protected from disclosure as such. (See Order at p. 9.) Even assuming the documents were created in anticipation of an actual litigation matter, the assertion of the work product doctrine, without providing any identifying details of the litigation itself is clearly insufficient.

---

[5] Specifically, Scoll has designated the following documents responsive to Request No. 19 as relating to unnamed "litigation" in some manner: Page 1—10/19/2000, 10/16/2000; Page 2—all documents after "Undated"; Page 3—all documents; Page 4—all documents except 10/13/2000; Page 5—all documents; Page 6—all documents; Page 7—all documents; Page 8—all documents except last two "Undated" documents; Page 9—1/12/1988 through "Undated. . . Draft Letter"; Page 12—3/16/1999 through 6/22/1998; Page 13—all documents; Page 14—all documents; Page 15—2/28/1997 through "Undated . . . Draft Court Filings with Attorney Notes thereon", 4/26/2000 through 3/29/2000, and 10/6/1999 through 8/25/1998; and Page 16—8/25/1998 through "Undated . . . Note by client on Correspondence and Attorney Notes on Correspondence", and 11/24/1998 through 10/15/1998.

[6] Specifically, Scoll has designated the following documents responsive to Request No. 26 as relating to unnamed "litigation" in some manner: Page 1—8/25/1999 through 9/20/1999.

[7] Specifically, Scoll has designated the following documents responsive to Request No. 31 as relating to unnamed "litigation" in some manner: Page 2—"Undated. . . Letter"; Page 3—1/23/2001 through 9/22/2000, 12/13/2000 through 10/19/2000.

[8] Specifically, Scoll has designated the following documents responsive to Request No. 32 as relating to unnamed "litigation" in some manner: Page 2—9/22/2000 through 10/12/2000; Page 3—"Undated . . . Letter" through 9/22/2000, 12/13/2000 through 10/29/2000;

[9] Specifically, Scoll has designated the following documents responsive to Request No. 34 as relating to unnamed "litigation" in some manner: Page 1—"Undated. . . Letter" through 9/25/2000.

[10] Specifically, Scoll has failed to even reference any litigation with respect to the following documents: See Privilege Log:

Request No. 19: Page 1—"Printed on 11/13/2003"; Page 7—6/2/1999

Request No. 31: Page 1—4/27/1999; Page 2—"Undated . . . Legal Document with Notes thereon"; Page 4—10/13/2000, 5/1/2001.

Request No. 32: Page 2--4/27/1999, "Undated . . . Legal Document with Notes thereon", Page 3—10/11/1999; Page 4—10/13/2000, 5/1/2001.

Request No. 34: Page 2—9/22/2000.

Request No. 35: Page 3—"Undated . . . Computer Generated Report".

Request No. 36: Page 3—"Undated . . . Computer Generated Report".

Ms. Steffenberg is entitled, at a minimum, to know the names of the parties to the litigation or, if a matter did not advance to formal litigation, the nature and parties to the prospective litigation. Further, without this information, this Court cannot, as a practical matter, determine whether Scoll has met the second criteria of the work product doctrine test—that is, that a document was actually prepared in "anticipation of litigation". See Ferrara & DiMercurio, 173 F.R.D. at 13. Moreover, it is black-letter law that the facts contained in the underlying work product are not protected by the work product doctrine. See In Re Savitt/Adler Litig., 176 F.R.D. 44, 48 (N.D.N.Y. 1997); Laxalt v. McClatchy, 116 F.R.D. 438, 442-443 (D.Nev. 1987). Scoll has failed to demonstrate the applicability of the work product doctrine to the documents designated as such in his Privilege Log and the Court's finding that the work product doctrine renders these documents non-discoverable is clearly erroneous. Accordingly, those documents in Scoll's Privilege Log which he contends were created in anticipation of litigation must be produced.

        b.    Ms. Steffenberg Demonstrated "Substantial Need" and "Undue Hardship".

Finally, the Court improperly found that Mrs. Steffenberg had failed to establish "substantial need for each document or group of documents at this stage of the litigation." (See Order, at p. 10.) Even assuming Scoll sustained his burden of demonstrating the applicability of the work product doctrine as to all of the documents designated as such in the Privilege Log, which Ms. Steffenberg vigorously disputes, the Privilege Log indicates that Scoll has, in his possession, numerous documents that constitute "ordinary" work product which are essential to Ms. Steffenberg's case against Gilman, the Corporate

Defendants and Scoll.[11] As such, Ms. Steffenberg has sustained her burden of proving the "substantial need/undue hardship" standard.

      i.    *"Substantial Need"*

In order to establish a "substantial need" for purposes of overcoming the protections provided by the work product doctrine, a party must demonstrate that the facts contained in the requested documents are essential elements of the requesting party's prima facie case. See Moore's Federal Practice, § 26.70[5][c] at p. 222.5. It is undisputable that the information in the documents Scoll has claimed in the Privilege Log are protected by the work product doctrine and which arguably constitute "ordinary" work product are essential to Ms. Steffenberg's case against Gilman, the Corporate Defendants and, most importantly, Scoll.

First, the crux of Ms. Steffenberg's claims against Gilman is that he utilized the Corporate Defendants in order to defraud her and her husband of virtually all of their retirement assets, worth roughly $1 million. Ms. Steffenberg, however, has access only to the fraudulent investment account statements sent to her by Gilman and the Corporate Defendants while they were purportedly investing the Steffenbergs' monies. Therefore, since Scoll represented Gilman and/or the Corporate Defendants while Gilman was

---

[11] See e.g. Request No. 19: Page 1—"Printed on 11/13/2003, "Printed on 11/13/2003"; Page 2—"Printed on 11/13/2003", "Undated . . . "Diagram with Attorney Notes thereon", 2/16/2000, 1/30/2001; Page 5—12/6/1999; Page 7—8/15/2000; Page 8—"Printed on 3/1/2000"; Page 15—3/3/1999, "Undated . . . Docket Report with Attorney Notes thereon", Page 16—8/25/1998 through 8/25/1998, 8/27/1998; 10/15/1998 through 10/15/1998 (three documents).

These documents are provided by way of example for this Court; due to the generalized nature of Scoll's descriptions in the Privilege Log of the documents, and the fact that Scoll's notes allegedly populate the vast majority of documents which would otherwise appear to constitute "ordinary" work product, it is extremely difficult for Ms. Steffenberg to identify with particularity each document in the Privilege Log which, in actuality, constitutes "ordinary" work product. As such, this Court should order Scoll to identify the documents that are actually "ordinary" work product as contemplated by Rule 26(b)(3) since he bears the burden of demonstrating the applicability of the work product doctrine. See Ferrara & DiMercurio, 173 F.R.D. at 13.

involved with the Steffenbergs and simultaneously representing the Steffenbergs, information and documents in Scoll's possession may reveal Gilman's <u>modus operandi</u> with respect to Ms. Steffenberg's monies and, perhaps more importantly, the current whereabouts of her monies.

In addition, the documents which Scoll claims, in the Privilege Log, are protected by the work product doctrine are particularly critical to Ms. Steffenberg's case against Scoll himself. Ms. Steffenberg's claims against Scoll are premised on the fact that Scoll <u>knew</u>, or <u>should have known</u>, of Gilman and the Corporate Defendants' fraudulent activities <u>because</u> he simultaneously acted as counsel to the Steffenbergs, Gilman, and the Corporate Defendants <u>and</u> served as a Director of Defendants, Commonwealth Financial Holdings and TradeTek, LLC. All of the documents, therefore, in the Gilman File which reflect the work performed by Scoll for Gilman and the Corporate Defendants are essential to Ms. Steffenberg's ability to establish whether Scoll had knowledge of Gilman's activities. As such, Ms. Steffenberg has a substantial need for the documents Scoll has asserted are protected by the work product doctrine and which constitute "ordinary" work product.

      ii.    *Undue Hardship*

Ms. Steffenberg also established that she will suffer undue hardship if Scoll is permitted to use the work product doctrine as a cloak for the documents he created for Gilman and the Corporate Defendants. In addition to the reasons set forth above, the facts that Gilman is under investigation by the Federal Bureau of Investigation and that all of the Corporate Defendants have "vanished" and are no longer in operation, Ms. Steffenberg has exhausted her sources for the information which is currently secreted in

Scoll's possession.[12] The circumstances of this case, i.e. the stark unavailability of the information critical to Ms. Steffenberg's case against Gilman, the Corporate Defendants and Scoll, are akin to those cases in which courts have allowed a party access to witness statements because the witnesses can no longer recall the information sought. See e.g. In re Int'l Sys. & Controls Corp. Sec. Litig., 693 F.2d 1235, 1241-1242 (5th Cir. 1982); Moore's Federal Practice, at § 27.60[5][d] at p. 223 and n. 72. Similarly here, evidence of Scoll's knowledge and/or involvement in Gilman's fraudulent activities is buried in the Gilman File. Therefore, where, as here, a party has demonstrated that she has a substantial need for, and will suffer undue hardship if the party resisting discovery is not required to produce, "ordinary" work product, discovery of that "ordinary" work product is proper.

---

[12]  None of the individuals who Ms. Steffenberg's counsel have deposed or interviewed, for example, have any relevant knowledge as to whether Scoll was involved in, or had knowledge of, Gilman's activities, since they themselves claim to have no knowledge of Gilman's conduct. These individuals include David Gelfond, Gilman's brother-in-law and co-officer of Commonwealth Financial Holdings and the TradeTek companies; Robert Brumbaugh, the founder of Financial Links, Inc. who eventually sold the company to Gilman; Jed Chmara, a trader associated with the TradeTek entities; and William Gilman, one of Gilman's sons who worked at TradeTek, LLC and/or TradeTek, Ltd. for a period of time. Only Scoll himself truly knows, and the Gilman File will reflect, whether Scoll was involved in, or aware of -- or should have been aware of – Gilman's conduct.

2. <u>Scoll Has Failed To Demonstrate That The "Opinion" Work Product Doctrine Applies To Many Of The Documents He Has Designated As Such[13]; The Court Further Improperly Applied The "Opinion" Work Doctrine.</u>

---

[13] Scoll has asserted that the "opinion product" doctrine renders the following documents non-discoverable, but has failed to identify the litigation for which the documents were created:

Request No. 19: Page 2—Printed on 11/13/2003, 6/7/1999, Page 8—"Undated . . . Draft Letter", "Undated . . . Attorney Notes"; Page 9—8/5/1986, "Undated . . . Attorney Notes . . . By Attorney Scoll", June, 1986, 8/25/1986, "Undated. . . Attorney Notes. . . By Attorney Scoll", 7/19/41, 6/19/85, "Undated . . . Attorney Notes . . . By Attorney Scoll", 6/18/85; Page 10—6/19/1985 through 2/7/1985, 8/29/1985 through 2/11/1982, "Undated . . . Draft Legal Document with Attorney Notes thereon", "Undated . . . Attorney Notes . . . By Attorney Scoll", 6/19/1985, 4/11/1985 through 8/5/1986, 7/26/1984 through 6/28/1984; Page 12—"Undated . . . Attorney Notes" through 3/28/1984, 6/22/1998; and Page 15—"Undated . . . Draft Court Filings with Attorney Notes thereon".

Request No. 20: 12/7/1992, 10/5/1992 through 8/25/1992 and 8/8/1989.

Request No. 21: 12/7/1992, 10/5/1992 through 8/25/1992, 8/8/1989 and 5/9/1989.

Request No. 22: 12/7/1992.

Request No. 23: "Undated . . . Attorney Notes", "Undated . . . Legal Research Materials with Attorney Notes thereon", and "Undated . . . Draft Corporate Document with Attorney Notes thereon."

Request No. 24: "Undated . . . Attorney Notes", "Undated . . . Legal Research Materials with Attorney Notes thereon", "Undated . . . Draft Corporate Document with Attorney Notes thereon", 2/28/2000 through 6/17/1998.

Request No. 26: 8/25/1999 through "Undated . . . Computer Generated Report with Notes thereon faxed to Attorney Scoll."

Request No. 27: All documents.

Request No. 28: Page 1—10/10/2000 through "Notes Undated", "Undated . . . Legal Document with Attorney Notes thereon", "Undated . . . Draft Legal Document with Attorney Notes thereon", "Undated . . . Draft Legal Document with Attorney Notes thereon", and "Undated Draft Legal Document with Attorney Notes Thereon" to end.

Request No. 29: Page 1—10/10/2000 through 8/24/2000, 3/30/1999 through 8/13/1999; Page 2—7/21/1999 through 7/2/1999, 7/1/1999 ("Letter") through 2/25/1999, "Undated . . . Draft Legal Document with Attorney Notes thereon" through 2/12/1999, 2/5/1999 through 2/5/1999; Page 3—"Undated. . .Draft Legal Document" through "Undated . . . Draft Legal Document with Attorney Notes thereon", "Notes Undated", and "Undated . . . Draft Legal Document with Attorney Notes thereon"; Page 4—"Undated . . . Draft Legal Document with Attorney Notes thereon", "Undated . . . Draft Legal Document with Attorney Notes thereon", and "Undated . . . Draft Legal Document with Attorney Notes thereon".

Request No. 30: Page 1--3/30/1999 through 3/4/1999, 7/20/1999 through last document; Page 2--7/1/1999 through 2/1/1999, 2/5/1999 through last document.

Request No. 31: Page 1—"Undated . . . Attorney Notes" through 8/16/2000, 6/7/1999 through 3/15/1999, 4/27/1999; Page 2— "Undated . . . Draft Document with Attorney Notes thereon" through "Undated . . . Draft Legal Document", "Undated . . . Legal Document with Notes thereon" through 6/10/1999, "Undated . . . Draft Court Filing" through "Undated . . . Legal Research Materials"; Page 3—7/19/2001 through "Undated . . . Draft Legal Document with Attorney Notes thereon . . . Notes by Attorney Scoll", "Undated . . . Draft Legal Document with Attorney Notes thereon . . . Notes by Attorney Scoll" through "Undated . . . Draft Legal Document", 10/3/2000 through "Undated . . . Draft Legal Document with Attorney Notes thereon . . . Notes by Attorney Scoll"; and Page 4—"Undated . . . Draft Legal Document with Attorney Notes thereon. . . By Attorney Scoll" through 3/2/2000, 10/27/2000, 10/26/2000

In addition to protecting work product prepared by an attorney in anticipation of litigation, Fed. R. Civ. P. 26(b)(3) also protects that attorney's "opinion" work product, also created during the course of litigation, subject to an even more stringent exception. See In re San Juan Dupont Plaza Fire Litigation, 859 F.2d at 1014-1015; see also U.S. Ex Rel. Hunt v. Merck-Medco Managed Care, L.L.C., (E.D. Pa. 2004); Moore's Federal Practice, § 26.70[5][e] at p. 224.  Thus, "'core' or 'opinion' work product that encompasses the 'mental impressions, conclusions, opinion, or legal theories of an attorney or other representative of a party concerning the litigation' is 'generally afforded near absolute protection from discovery'." In re Cendant Corp. Sec. Litigation, 343 F.3d 658, 663 (3d Cir. 2003) quoting In re Ford Motor Co., 110 F.3d 954, 962 n. 7 (3d Cir. 1997) (Emphasis added).  Therefore, "[i]f litigation is not imminent, or if the materials at issue were prepared in the ordinary course of business, they are generally not protected

---

through 2/5/2001, 4/2/2001 through 3/14/2001, 4/30/2001 through 3/1/2003, and "Undated . . . Draft Legal Document with Attorney Notes thereon".

   Request No. 32:  Page 1—10/19/2000 through 8/16/2000, 6/7/1999 through 3/15/1999, 9/18/2000; Page 2—3/11/1999 through ""Undated . . . Draft Legal Document", "Undated . . . Legal Document with Notes thereon. . . Notes by client" through 6/10/1999, "Undated . . . Draft Court Filing" through last document; Page 3—9/19/1999, 10/12/2000 through 3/14/2000, 8/30/1999; Page 3—7/19/2001 through "Undated . . . Draft Legal Document with Attorney Notes thereon. . . Notes by Attorney Scoll", "Undated . . . Draft Legal Document with Attorney Notes thereon" through "Undated . . . Draft Legal Document", 10/12/2000 through last document; Page 4--"Undated . . . Draft Legal Document with Attorney Notes thereon. . . Notes by Attorney Scoll", "Undated . . . Draft Legal Document with Attorney Notes thereon . . . By Attorney Scoll" through 3/2/2000, 10/27/2000, 2/5/2001 through 3/14/2001, 4/30/2001 through last document; Page 5--"Undated . . . Draft Legal Document with Attorney Notes thereon."

   Request No. 34:  10/19/2000 through 10/6/2000, 6/7/1999 through 9/14/1998.

   Request No. 35:  Page 1--10/13/2000 through 8/1/2000, 6/7/1999 through last document; Page 2—7/23/1999 through 7/2/1999, 7/1/1999 through last document; Page 3—1/27/1999 through 1/29/1999, "Notes undated" through "Undated . . . Computer Generated Report", 5/25/2000 through last document; Page 4—6/7/2000 through 4/1/1999.

   Request No. 36:  Page 1—10/13/2000 through 8/1/2000, 6/7/1999 through last document; Page 2—7/23/1999 through 7/2/1999, 7/1/1999 "Letter" through last document; Page 3—1/27/1999 through 1/29/1999, "Notes undated" through "Undated . . . Computer Generated Report", 5/25/2000 through last document; Page 4—6/7/2000 through last document.

   Request No. 38:  Page 1—10/13/2000 through 10/4/2000, 6/7/1999 through last document; Page 2—7/22/1999 through 7/2/1999, 7/1/1999 "Letter" through 2/1/1999, 6/7/2000 and 12/15/2000.

by either the attorney client privilege or the work product doctrine." See Schmidt, Long & Assoc., Inc. v. Aetna U.S. Healthcare, Inc., 2001 WL 605199 (E.D. Pa. May 31, 2001) (emphasis added.)

The "opinion" work product doctrine, embodied in Fed. R. Civ. P. 26(b)(3) does not protect the documents Scoll has designated as "opinion" work product because he has not designated any associated litigation. (See supra, n. 10.) While the Court found that " . . . the remaining documents that are not classified as 'ordinary' work product fall under the opinion work product doctrine," (see Order at p. 11.), in fact most of the documents which Scoll identified as being protected by the "opinion product" doctrine in the Privilege Log are not identified as being created in anticipation of litigation. Put differently, Scoll outrageously casts his "opinion" work product net far too wide in an attempt to shield those documents which were not created when litigation was "'imminent'". See Schmidt, Long & Assoc., Inc. v. Aetna U.S. Healthcare, Inc., 2001 WL 605199. For example, on Page 2 of his Response to Request No. 19 in the Privilege Log, Scoll marks an "OP" with respect to the document type "Undated . . . Diagram with Attorney Notes thereon", but the document is described as "[d]iagram reflects discussion between T. Gene Gilman and Attorney Scoll re: general matters related to corporations." (See Privilege Log, Request No. 19, Page 2.) This is obviously insufficient under Rule 26(b)(3); see also In re Cendant Corp. Sec. Litigation, 343 F.3d at 663. Therefore, the documents specified supra at n. 10 are not protected by the "opinion" work product doctrine, and, as such, Scoll has no basis upon which to resist their disclosure.

B. **There Is No Protection For Incorporation Documents.**

Finally, the Court's denial of Ms. Steffenberg's request for incorporation materials of the Corporate Defendants is also clearly erroneous. (See Order at p. 11.) First, although, as the Court found, some of these documents are " . . . available as public information through the Secretary of State's office," simply by placing the documents in an attorney's file does not render them non-discoverable. See e.g. Pacamor Bearings, Inc. v. Minebea Co., Ltd., 918 F.Supp. 491, 511 (D.N.H. 1996) ("attachments which are 'matters of public record or communications with outside parties . . . cannot be privileged because the requisite confidentiality does not exist.")[14] Moreover, most incorporation materials are simply not available through a given secretary of state's office, such as by-laws and minutes of directors' meetings, yet these are indisputably public information. See id. at 513 ("'materials assembled in the ordinary course of business, or pursuant to public requirements unrelated to litigation, or for other nonlitigation purposes' are not protected under Rule 26(b)(3). . . .'") Clearly, the Court's finding that such documents are protected by the work product doctrine is erroneous.

## CONCLUSION

Scoll seeks to use the privileges afforded to his former clients, Gilman and the Corporate Defendants, purely to protect himself from liability to Ms. Steffenberg. Thus

---

[14] In addition, this finding ignores the fact that some of the Corporate Defendants which were intimately involved in Gilman's fraudulent activities, such as Commonwealth Financial Holdings, appear never to have been formally registered with any state, or let their state registrations lapse years ago, i.e. Gilman Insurance Agency, yet the Privilege Log indicates that Scoll has documents that are responsive to Ms. Steffenberg's request for " . . . documents that evidence, reflect or reference [those entities], including but not limited to articles of incorporation, by-laws, amendments, minutes of the board(s) of directors meetings, and state filings relating to registration and incorporation." See Plaintiff's First Request for Documents, Request Nos. 21, 36; Privilege Log, Request Nos. 21, 36. Because such documents are critical to Ms. Steffenberg's claims against Gilman and the Corporate Defendants, and also to her claims against Scoll, and because the information contained therein is not available through any other means, Scoll should be required to produce these documents to Ms. Steffenberg. See Colonial Gas v. Aetna Cas. & Sur., 144 F.R.D. at 645.

squarely defeats the intent of the privileges at issue in this case. Thus, as he has failed to sustain his burden on the applicability of the attorney-client and joint defense privileges, and the "ordinary" and "opinion" work product doctrines, the Court should allow Ms. Steffenberg's Motion for Reconsideration, and require Scoll to produce the documents responsive to her Request Nos. 19-32, 34-35 and 38-39 in her First Request for Production of Documents.

Respectfully submitted,

ELIZABETH R. STEFFENBERG
By her attorneys,

_____
Louis M. Ciavarra, Esquire (BBO #546481)
Christine S. Collins, Esquire (BBO #639293)
Bowditch & Dewey, LLP
311 Main Street
P.O. Box 15156
Worcester, MA 01615-0156
(508) 926-3441
(508) 929-3041

Dated: February 2, 2005

## CERTIFICATE OF SERVICE

I, Christine S. Collins, hereby certify that I have this 2nd day of February, 2005 served the foregoing by mailing copy thereof, via first class mail, postage prepaid, to the following:

Kristin M. Knuuttila, Esquire
Prince, Lobel, Glovsky & Tye, LLP
585 Commercial Street
Boston, MA 02109-1024

Sara Discepolo, Esquire
Wilson, Elser, Moskowitz, Edelman
& Dicker LLP
155 Federal Street
Boston, MA 02110

_____
Christine S. Collins