EXHIBIT "C"

28624.1

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.: 04-40113-FDS

|  |  |  |
|---|---|---|
| ELIZABETH R. STEFFENBERG, | ) | (Christine S. Collins BBO#639293) |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| T. GENE GILMAN, STEVEN GILMAN, | ) | |
| THE GILMAN INSURANCE | ) | |
| AGENCY, INC., DAVID M. SCOLL, | ) | |
| ARBOR SECURITIES, LTD., | ) | |
| ALLIANCE INVESTMENT | ) | |
| MANAGEMENT, COMMONWEALTH | ) | PLAINTIFF'S SUPPLEMENTAL |
| FINANCIAL HOLDINGS INC., | ) | ANSWERS TO DEFENDANT |
| FINANCIAL LINKS, INC., | ) | DAVID M. SCOLL'S FIRST SET OF |
| T. GILMAN & CO., LTD., | ) | INTERROGATORIES |
| AVIVA LIFE INSURANCE COMPANY, | ) | |
| TRADETEK, LTD., and | ) | |
| TRADETEK, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Plaintiff, Elizabeth R. Steffenberg ("Mrs. Steffenberg"), hereby supplements her Answers to Defendant, David M. Scoll's ("Scoll") First Set of Interrogatories as follows:

## GENERAL OBJECTIONS AND DEFINITIONS

1.      Mrs. Steffenberg objects to each and every interrogatory to the extent that it seeks information protected by the attorney-client privilege and/or the work product doctrine.

2.      Mrs. Steffenberg objects to each and every interrogatory to the extent that it purports to establish a continuing duty to supplement, or seeks to impose a duty beyond those imposed by the Federal Rules of Civil Procedure.

{J:\CLIENTS\lit\303603\0001\00491437.DOC;3}

3.    Each of the General Objections shall be deemed to apply to each of Scoll's separate interrogatories.

4.    As used herein, the term "Steffenberg File" refers to those documents produced by Mrs. Steffenberg to Scoll on or about October 27, 2004 in connection with Scoll's First Request for Production of Documents and in supplemental document productions.

5.    Mrs. Steffenberg objects to each and every interrogatory that cites specific paragraphs of the "Plaintiff's Second Amended Verified Complaint dated April 13, 2004" on the grounds that the April 13, 2004 Verified Complaint is a nullity for the reasons set forth in correspondence dated November 29, 2004, a true and accurate copy of which is attached hereto.

6.    As used herein, the term "Second Amended Complaint dated May 3, 2004" refers to the Second Amended Verified Complaint filed with the Worcester Superior Court on May 3, 2004 upon Mrs. Steffenberg's Assented-to Motion for Leave to File the same.

## SPECIFIC RESPONSES

### Interrogatory No. 2

Describe in detail the factual basis for your contention in paragraph 42 of the Plaintiff's Second Amended Verified Complaint dated April 13, 2004 (hereinafter "Second Amended Complaint") that the Defendant was your personal attorney. If your answer includes any legal matters for which the Defendant was retained or gave advice, for each matter listed: 1) state the time period for which the Defendant provided legal services giving exact dates for when the services commended and ended; 2) state whether the legal services were provided to both you and Arthur J. Steffenberg or only you; 3) describe the legal services provided; 4) describe the facts or circumstances giving rise to your need for legal services; 5) state the outcome of the legal matter, if any; and 6) state the amount of any legal fee paid.

## ANSWER NO. 2

Mrs. Steffenberg objects to Interrogatory No. 2 on the grounds that it is overbroad, burdensome and seeks information protected by the attorney-client privilege and/or work product doctrine.

Subject to and without waiving the foregoing objections and the General Objections, Mrs. Steffenberg answers as follows:  My husband and I retained Scoll as our attorney in or about 1992 or 1993.  He served as our attorney until late November, 2003.  Scoll was referred to us by Defendant, T. Gene Gilman ("Gilman").  Over the years, Scoll represented both me and my husband in all situations where we required legal assistance, including, but not limited to, preparing and updating of our estate plans; annually preparing our federal and state tax returns; and handling the purchase and sale of our homes in Maine and Massachusetts, as well as the details of our move to the Briarwood Retirement Community.  We also asked him to act as the trustee of our life insurance trust, and to serve as attorney-in-fact in the event of my incapacity. Scoll is the only attorney that my husband and I used after we retained him over ten (10) years ago.  Whenever we needed legal assistance of any kind, we always called him because we perceived him as our attorney and placed an enormous amount of trust in him.

Further answering, pursuant to Fed. R. Civ. P. 33(d), Mrs. Steffenberg refers Scoll to the Steffenberg File.

## SUPPLEMENTAL ANSWER NO. 2

Mrs. Steffenberg objects to Interrogatory No. 2 on the grounds that it misstates the allegations contained in Paragraph 42 of the Second Amended Complaint dated May 3, 2004, and is therefore unanswerable in its present form.

Subject to and without waiving the foregoing objections, the objections set forth in Answer No. 2 and the General Objections, Mrs. Steffenberg states as follows:

Mrs. Steffenberg and her husband retained Scoll in the summer of 1992 at the recommendation of T. Gene Gilman ("Gene Gilman") because Mr. Steffenberg and his business partner were contemplating selling their business for a substantial sum. At that time, Gene Gilman was the Steffenbergs' financial advisor and, as such, was developing an overall financial plan for the Steffenbergs which would encompass all of their investments, including annuities, retirement accounts, real estate, and proceeds from the sale of the business. Scoll was retained by the Steffenbergs at that time to work with Gene Gilman in reviewing and, if necessary, revising the Steffenbergs' estate plan as part of their overall financial plan. In doing so, Scoll was provided with information pertaining to the Steffenbergs' investments and asset allocations by Gene Gilman.

In the fall of 1992, Scoll drafted a variety of estate planning documents for the Steffenbergs, including a homestead election, the Steffenberg Family Trust, the Steffenbergs' reciprocal wills and their general durable powers-of-attorney. These documents were executed by the Steffenbergs in December, 1992.

In May, 1995, the Steffenbergs decided to purchase real property located at 179 Country Lane in Leominster, Massachusetts which they planned to give to their daughter, Nancy Maloughney. Scoll handled the purchase of 179 Country Lane, which also necessitated updating the Steffenbergs' estate plan. Over the ensuing months, Scoll worked in conjunction with Gene Gilman to update their estate plan in light of this additional asset and was provided with more information by Gene Gilman pertaining to the Steffenbergs' investments. During the fall of 1995, at the recommendation of Scoll, the Steffenbergs updated their healthcare proxies

and created a the Steffenberg Irrevocable Life Insurance Trust (the "Trust") which was the owner of a Commercial General Union "Second-to-Die" life insurance policy sold to the Steffenbergs by Gene Gilman (the "CGU Policy"). The Steffenbergs trusted Scoll and Gene Gilman to such an extent that they named Scoll and Gene Gilman as Trustees of the Trust. Thereafter, Scoll and Gene Gilman managed the Trust's operations, including issuing the "Crummey" notices required to maintain the Trust, in 1995 and 1996.

Subsequently, in March, 1996, the Steffenbergs executed wills, living trusts, and general durable powers-of-attorney, all of which were prepared by Scoll. The Steffenbergs named Scoll and Gene Gilman as successor executors of their respective wills, and they also named Scoll and Gene Gilman as successor trustees of the Steffenbergs' living trusts. Between 1996 and 1997, Scoll also prepared and filed Federal Gift Tax Returns for both of the Steffenbergs.

Months later, Scoll advised the Steffenbergs that they needed to account for gifts made to their children during their respective lifetimes, including the gift of 179 Country Lane to their daughter, Nancy. Accordingly, the Steffenbergs amended the living trusts in July, 1997. Soon thereafter, in December, 1997, Scoll updated the Steffenbergs' respective general durable powers-of-attorney in which the Steffenbergs named Scoll as their attorney-in-fact in the event of their respective disabilities. The powers-of-attorney gave Scoll the power to make gifts of their assets on their behalf.

Approximately one year later, in January, 1999, Scoll and Gene Gilman again reviewed the status of the Steffenbergs' assets and estate plan together, with Gene Gilman providing Scoll with statements reflecting the Steffenbergs' asset valuations. Scoll provided the Steffenbergs with a "summary" of their estate plan at that time. Scoll and Gene Gilman subsequently

continued to oversee the Steffenbergs investments and in October, 1999, discussed the possibility of creating an "offshore" trust for the Steffenbergs.

In January, 2000, the Steffenbergs relocated from Leominster to their second home in Wells, Maine. Scoll handled the sale of the Steffenbergs' home at 193 Country Lane in Leominster and the refinancing of their Wells home for them. However, in November, 2001, the Steffenbergs decided to return to Massachusetts. At that time, it was determined that Scoll should undertake another review of the Steffenbergs' estate plan. No changes were made to the Steffenbergs' estate planning documents at that time; however, in or about that same time, Scoll and Gene Gilman counseled the Steffenbergs with respect to the financial and legal implications of their move to the Briarwood Retirement Community in Worcester.

From the time that the Steffenbergs moved to Briarwood through Mr. Steffenberg's death in late August, 2003, Gene Gilman continued to manage the Steffenbergs' investments while Scoll oversaw the Steffenbergs' estate plan, handling at least one small matter for them during that time period. Shortly after Mr. Steffenberg's death in late August, 2003, Scoll and Gene Gilman met with Mrs. Steffenberg and her children concerning the status of the Steffenbergs' assets and updating Mrs. Steffenberg's estate plan. At that time, on or about October 3, 2003, Mrs. Steffenberg executed a new durable power-of-attorney in which she again named Scoll as her attorney-in-fact in the event of her disability. Shortly thereafter, in or about early December, 2003, she terminated Scoll as her attorney after she learned that virtually all of her investments had disappeared.

Further answering, pursuant to Fed. R. Civ. P. 33(d), Mrs. Steffenberg refers Scoll to the Steffenberg File and documents produced by Scoll in connection with this matter to date. Mrs. Steffenberg reserves the right to supplement her Answer to Interrogatory No. 2.

## Interrogatory No. 4

State in detail how the Defendant's alleged knowledge of TradeTek's operations as described by you in paragraph 27 of the Second Amended Complaint caused the Plaintiff harm.

## ANSWER NO. 4

Mrs. Steffenberg objects to Interrogatory No. 4 on the grounds that it is overbroad and burdensome. Mrs. Steffenberg further objects to Interrogatory No. 4 on the grounds that it seeks information protected by the attorney-client privilege and/or work product doctrine and calls for a legal conclusion. Mrs. Steffenberg also objects to Interrogatory No. 4 on the grounds that it misstates the allegations contained in Paragraph 27 of the Second Amended Complaint, and is therefore unanswerable in its present form.

## SUPPLEMENTAL ANSWER NO. 4

Mrs. Steffenberg objects to Interrogatory No. 4 on the grounds that it misstates the allegations contained in Paragraph 47 of the Second Amended Complaint dated May 3, 2004, and is therefore unanswerable in its present form.

Subject to and without waiving the foregoing objections, the objections set forth in Answer No. 4, and the General Objections, Mrs. Steffenberg states as follows:

Based on information available to Mrs. Steffenberg to date, Scoll served as Gene Gilman's personal attorney from 1981 through approximately December, 2003. Scoll also served as counsel to Trade Tek, Arbor Securities, Commonwealth Financial Holdings, Gilman Insurance Agency, T. Gilman & Co., and Financial Links at various times between 1993 and November, 2003. As counsel to these entities, Scoll would have had information concerning the nature of their business activities. Scoll and Gene Gilman also jointly served as directors of Trade Tek and Commonwealth Financial Holdings, while Gene Gilman was also an officer of

{J:\CLIENTS\lit\303603\0001\00491437.DOC;3}    7

both companies. In his capacity as a director of Trade Tek and Commonwealth Financial Holdings, Scoll would have had information pertaining to the financing of TradeTek, including financial statements and budget materials.

While Scoll was counsel to Gene Gilman, Trade Tek, Arbor Securities, Commonwealth Financial Holdings, Gilman Insurance Agency, T. Gilman & Co., and Financial Links, as well as a director of Trade Tek and Commonwealth Financial Holdings, he and Gene Gilman were both jointly managing and updating the Steffenbergs' investments and estate plan and jointly serving as Trustees of the Trust. Mrs. Steffenberg had also named Scoll as the disinterested attorney-in-fact in the event of Mrs. Steffenberg's disability under her 1997 durable power-of-attorney. In these fiduciary capacities, Scoll had access to information pertaining to the Steffenbergs' investment portfolio and asset allocations. In addition, during the time that Scoll represented the Steffenbergs, he was provided with documentation from Gene Gilman which reflected that the same companies Scoll was representing, including Gilman Insurance Agency, T. Gilman & Co., Commonwealth Financial Holdings, and Financial Links, were being used by Gene Gilman to manage the Steffenbergs' investments. As the Steffenbergs' attorney, Trustee of their Trust and attorney-in-fact, Scoll was required to exercise reasonable and prudent judgment towards the Steffenbergs, including to act with undivided loyalty and in their best interests at all times, to represent them zealously, and to fully and fairly disclose to them all facts material to their interests, including actual or potential conflicts of interest. Scoll was also bound to inform the Steffenbergs of any actual or potential conflict of interest which might arise during the course of his representation of them.

While Scoll and Gene Gilman were jointly representing the Steffenbergs' financial and estate planning interests, beginning in approximately 1999, Gene Gilman diverted Mrs.

Steffenberg's investment assets to offshore accounts at Arbor Securities without her knowledge or authorization. The diversion of the Steffenbergs' assets was achieved using false investment statements generated by Gene Gilman, Steven Gilman, Commonwealth Financial Holdings, Gilman Insurance Agency, T. Gilman & Co., and Financial Links. In addition, in the two days following Mr. Steffenberg's death, Gene Gilman also procured Mrs. Steffenberg's signature on documents authorizing the wire transfer of the proceeds from her husband's Commercial General Union life insurance policy and two certificates of deposit from a Maine bank to, ultimately, an offshore account at Arbor Securities.

Upon information and belief, Mrs. Steffenberg further states that the Steffenbergs' monies were ultimately used by Gene Gilman, Trade Tek and Commonwealth Financial Holdings to finance Trade Tek's operations in Needham, Massachusetts. In the numerous capacities that Scoll served the Steffenbergs, Gene Gilman and his companies, Scoll knew or should have known the nature and sources of Trade Tek's financing, as well as the nature of the activities of Arbor Securities, Commonwealth Financial Holdings, Gilman Insurance Agency, T. Gilman & Co., and Financial Links, particularly as they related to the Steffenbergs' investments. He knew or should have known that Trade Tek was being financed by offshore accounts, including but not limited to, those of Mrs. Steffenberg, using Arbor Securities, Commonwealth Financial Holdings, Gilman Insurance Agency, T. Gilman & Co., and Financial Links. If Scoll did know that the Steffenbergs' investments were being used to fund a company for which he served as counsel and a director, he failed to disclose this information to the Steffenbergs and/or to withdraw as their counsel. As a result of Scoll's negligence and breach of his duties to the Steffenbergs, Mrs. Steffenberg has suffered damages in the amount of approximately $1,500,000.00.

Further answering, Mrs. Steffenberg refers to her Answer to Interrogatory No. 2. Mrs. Steffenberg reserves the right to supplement her Answer to Interrogatory No. 4.

**Interrogatory No. 5**

State in detail how the Defendant's conduct you allege in paragraph 48 of the Second Amended Complaint caused the Plaintiff harm.

**ANSWER NO. 5**

Mrs. Steffenberg objects to Interrogatory No. 5 on the grounds that it is overbroad and burdensome. Mrs. Steffenberg further objects to Interrogatory No. 5 on the grounds that it seeks information protected by the attorney-client privilege and/or work product doctrine and calls for a legal conclusion. Mrs. Steffenberg also objects to Interrogatory No. 5 on the grounds that it misstates the allegations contained in Paragraph 48 of the Second Amended Complaint and is therefore unanswerable in its present form.

**SUPPLEMENTAL ANSWER NO. 5**

Mrs. Steffenberg also objects to Interrogatory No. 5 on the grounds that it misstates the allegations contained in Paragraph 48 of the Second Amended Complaint dated May 3, 2004 and is therefore unanswerable in its present form.

Subject to and without waiving the foregoing objections, the objections set forth in Answer No. 5 and the General Objections, Mrs. Steffenberg refers to her Answer to Interrogatory Nos. 2 and 4. Mrs. Steffenberg reserves the right to supplement her Answer to Interrogatory No. 5.

**Interrogatory No. 6**

State in detail why you believe the Defendant's alleged simultaneous representation of the Plaintiff and the Defendants, service as Trustee, and/or service as attorney-in-fact to the Plaintiff, all as described in paragraph 48 of the Second Amended Complaint, constituted a breach of the Defendant's fiduciary duty to the Plaintiff. If your answer is based on an alleged conflict of interest as between two common clients of the Defendant, state the date when you allege the Defendant first became aware of the conflict, the factual basis for your belief that he was aware of it, and how the conflict of interest caused you damage.

**ANSWER NO. 6**

Mrs. Steffenberg objects to Interrogatory No. 6 on the grounds that it seeks information protected by the attorney-client privilege and/or work product doctrine, and calls for a legal conclusion. Mrs. Steffenberg further objects to Interrogatory No. 6 on the grounds that it misstates the allegations contained in Paragraph 28 of the Second Amended Verified Complaint, and is therefore unanswerable in its present form.

**SUPPLEMENTAL ANSWER NO. 6**

Mrs. Steffenberg objects to Interrogatory No. 6 on the grounds that it misstates the allegations contained in Paragraph 48 of the Second Amended Complaint dated May 3, 2004, and is therefore unanswerable in its present form.

Subject to and without waiving the foregoing objections, the objections set forth in Answer No. 6, and the General Objections, Mrs. Steffenberg refers to her Answers to Interrogatory Nos. 2 and 4.

Further answering, Mrs. Steffenberg states that Scoll was required to inform the Steffenbergs of any conflict of interest, potential or existing, during the course of his

representation. Scoll did not advise the Steffenbergs that he represented Gene Gilman personally, as well as many of the companies Gene Gilman founded and/or controlled, including Arbor Securities, Commonwealth Financial Holdings, Gilman Insurance Agency, T. Gilman & Co., Financial Links and Trade Tek, although Scoll's ability to effectively represent the Steffenbergs was compromised because of the possibility that their interest would differ from those of Gene Gilman and his companies. In addition, in or about July, 1997, the Steffenbergs disclosed to Scoll that Gene Gilman had failed to repay them in accordance with the terms of a promissory note between Mr. Steffenberg and Gene Gilman, and that the final payment was due in December, 1997. When the Steffenbergs informed him of their dispute with Gene Gilman, Scoll still did not disclose the full nature and extent of his representation of Gene Gilman, Gilman Insurance Agency and T. Gilman & Co. at that time despite the existence of a direct conflict of interest. Nor did Scoll ever inform the Steffenbergs that he represented almost all of the companies that Gene Gilman was using to invest the Steffenbergs' assets at any time. Scoll further did not ask for, or ever obtain, the Steffenbergs' written consent to this dual representation, despite the existence of a direct conflict of interest, nor did he withdraw from simultaneously representing the Steffenbergs, on the one hand, and/or Gene Gilman, Gilman Insurance Agency, T. Gilman & Co., Arbor Securities, Financial Links, Commonwealth Financial Holdings and Trade Tek. Mrs. Steffenberg reserves the right to supplement her Answer to Interrogatory No. 6.

**Interrogatory No. 7**

State in detail the facts which support your allegation in paragraph 47 of the Second Amended Complaint that the Defendant knew or reasonably should have known that TradeTek's operations were being financed by the Steffenberg's investments without their knowledge or authorization.

## ANSWER NO. 7

Mrs. Steffenberg objects to Interrogatory No. 7 on the grounds that it seeks information protected by the attorney-client privilege and/or work product doctrine, and calls for a legal conclusion. Mrs. Steffenberg further objects to Interrogatory No. 7 on the grounds that it misstates the allegations contained in Paragraph 47 of the Second Amended Complaint, and is therefore unanswerable in its present form.

Subject to and without waiving the foregoing objections and the General Objections, pursuant to Fed. R. Civ. P. 33(d), Mrs. Steffenberg refers Scoll to the Steffenberg File.

## SUPPLEMENTAL ANSWER NO. 7

Mrs. Steffenberg objects to Interrogatory No. 7 on the grounds that it misstates the allegations contained in Paragraph 47 of the Second Amended Complaint dated May 3, 2004, and is therefore unanswerable in its present form.

Subject to and without waiving the foregoing objections, the objections set forth in Answer No. 7, and the General Objections, Mrs. Steffenberg refers to her Answers to Interrogatory Nos. 2, 4 and 6. Mrs. Steffenberg reserves the right to supplement her Answer to Interrogatory No. 7.

## Interrogatory No. 8

Give the specific date by day, month and year when you are alleging the Defendant's knowledge and/or imputed knowledge, as described paragraph 47 of the Second Amended Complaint, first existed and the factual basis for your contention that said knowledge or imputed knowledge began on such date.

**ANSWER NO. 8**

Mrs. Steffenberg objects to Interrogatory No. 8 on the grounds that it seeks information protected by the attorney-client privilege and/or work product doctrine, and calls for a legal conclusion. Mrs. Steffenberg further objects to Interrogatory No. 8 on the grounds that it misstates the allegations contained in Paragraph 47 of the Second Amended Complaint, and is therefore unanswerable in its present form.

Subject to and without waiving the foregoing objections and the General Objections, pursuant to Fed. R. Civ. P. 33(d), Mrs. Steffenberg refers Scoll to the Steffenberg File.

**SUPPLEMENTAL ANSWER NO. 8**

Mrs. Steffenberg objects to Interrogatory No. 8 on the grounds that it misstates the allegations contained in Paragraph 47 of the Second Amended Complaint dated May 3, 2004, and is therefore unanswerable in its present form.

Subject to and without waiving the foregoing objections, the objections set forth in Answer No. 8, and the General Objections, Mrs. Steffenberg refers to her Answers to Interrogatory Nos. 2 and 4. Further answering, Mrs. Steffenberg states that although she cannot identify a specific day, month and year that Scoll knew or should have known that Trade Tek was being financed with the Steffenbergs' assets, based on the information available to Mrs. Steffenberg to date, Scoll represented Trade Tek between 1998 to 2003; Arbor Securities from at least July through September, 1999; Financial Links from 1998 to 2003; and Commonwealth Financial Holdings from 1998 to 2003. Scoll also served as a Director of Trade Tek and Commonwealth Financial Holdings for some period of time between 1998 and 2003. Mrs. Steffenberg reserves the right to supplement her Answer to Interrogatory No. 8.

**Interrogatory No. 9**

Identify the specific legal matter(s) for which the Defendant was retained by the Plaintiff and for which, according to paragraph 51 of the Second Amended Complaint, the Defendant failed to exercise reasonable care, stating for the legal matter(s) identified:  1) the time period for which the Defendant provided legal services giving exact dates for when the services commenced and ended; 2) whether the legal services were provided to both you and Mr. Steffenberg or only to you; 3) a description of the legal services provided in detail; 4) a description of the facts or circumstances giving rise to your need for legal services; 5) the reason why the legal services were deficient; 6) the outcome of the legal matter, if any; 7) the amount of any legal fee paid; and 8) the date when such legal fee was paid.

**ANSWER NO. 9**

Mrs. Steffenberg objects to Interrogatory No. 9 on the grounds that it is overbroad, burdensome and seeks information protected by the attorney-client privilege and/or work product doctrine. Mrs. Steffenberg further objects to Interrogatory No. 9 on the grounds that it misstates the allegations contained in Paragraph 51 of the Second Amended Complaint, and is therefore unanswerable in its present form.

Subject to and without waiving the foregoing objections and the General Objections, pursuant to Fed. R. Civ. P. 33(d), Mrs. Steffenberg refers Scoll to the Steffenberg File.

**SUPPLEMENTAL ANSWER NO. 9**

Mrs. Steffenberg objects to Interrogatory No. 9 on the grounds that it misstates the allegations contained in Paragraph 51 of the Second Amended Complaint dated May 3, 2004, and is therefore unanswerable in its present form.

Subject to and without waiving the foregoing objections, the objections set forth in Answer No. 9, and the General Objections, Mrs. Steffenberg refers to her Answers to Interrogatory Nos. 2, 4, 6 and 8. Further answering, Mrs. Steffenberg states as follows:

Between 1992 to 2003, in the course of representing the Steffenbergs and acting as Trustee of the Trust and as attorney-in-fact in the event of Mrs. Steffenberg's disability, Scoll and Gene Gilman worked hand-in-hand to create and oversee the Steffenbergs' financial and estate plan. During this time period, Scoll was provided with information by Gene Gilman relating to the Steffenbergs' financial investments. Scoll also explored various estate planning strategies for the Steffenbergs with Gene Gilman including the creation of an offshore trust by the Steffenbergs. Scoll breached his fiduciary duty and duties of reasonable care by failing to disclose facts material to their interests, including that he was engaged in a direct and/or potential conflict of interest by simultaneously representing Gene Gilman and his companies, and because Scoll knew, or should have known that Gene Gilman had diverted the Steffenbergs' liquid assets to offshore accounts at Arbor Securities and ultimately, upon information and belief, to Trade Tek, without their full knowledge and authorization, and that Gene Gilman was sending the Steffenbergs false investment statements reflecting fictitious investment holdings to accomplish these ends. As a result of Scoll's breach of his fiduciary duties and duty of reasonable care, Mrs. Steffenberg suffered the loss of approximately $1,500,000.00 of her investments and retirement assets. Mrs. Steffenberg reserves the right to supplement her Answer to Interrogatory No. 9.

**Interrogatory No. 10**

Describe in detail how the Defendant's alleged knowledge of T. Gene Gilman's conduct, as describe in paragraph 53 of the Second Amended Complaint, constituted a failure to exercise

reasonable care owed to the Plaintiff in each of the legal matters identified by you in your Answer to the preceding Interrogatory.

## ANSWER NO. 10

Mrs. Steffenberg objects to Interrogatory No. 10 on the grounds that it seeks information protected by the attorney-client privilege and/or work product doctrine, and calls for a legal conclusion. Mrs. Steffenberg further objects to Interrogatory No. 10 on the grounds that it misstates the allegations contained in Paragraph 53 of the Second Amended Complaint, and is therefore unanswerable in its present form.

## SUPPLEMENTAL ANSWER NO. 10

Mrs. Steffenberg objects to Interrogatory No. 10 on the grounds that it misstates the allegations contained in Paragraph 53 of the Second Amended Complaint dated May 3, 2004, and is therefore unanswerable in its present form.

Subject to and without waiving the foregoing objections, the objections set forth in Answer No. 10, and the General Objections, Mrs. Steffenberg refers to her Answers to Interrogatory Nos. 2, 4, 6, 8 and 9. Mrs. Steffenberg reserves the right to supplement her Answer to Interrogatory No. 10.

## Interrogatory No. 11

Describe in detail how the Defendant's simultaneous representation and role as Trustee and attorney-in-fact, all as alleged in paragraph 52 of the Second Amended Complaint, constituted a failure to exercise reasonable care owed to the Plaintiff in each of the legal matters identified by you in your Answer to Interrogatory #13 [sic].

## ANSWER NO. 11

Mrs. Steffenberg objects to Interrogatory No. 11 on the grounds that it seeks information protected by the attorney-client privilege and/or work product doctrine, and calls for a legal conclusion. Mrs. Steffenberg further objects to Interrogatory No. 11 on the grounds that it misstates the allegations contained in Paragraph 52 of the Second Amended Complaint and the information requested in Interrogatory No. 13, and is therefore unanswerable in its present form.

## SUPPLEMENTAL ANSWER NO. 11

Mrs. Steffenberg objects to Interrogatory No. 11 on the grounds that it misstates the allegations contained in Paragraph 52 of the Second Amended Complaint dated May 3, 2004, and is therefore unanswerable in its present form.

Subject to and without waiving the foregoing objections, the objections set forth in Answer No. 11, and the General Objections, Mrs. Steffenberg refers to her Answers to Interrogatory Nos. 2, 4, 6, 8 and 9.

## Interrogatory No. 12

Describe in detail how the Defendant's simultaneous representation and role as Trustee and attorney-in-fact, all as alleged in paragraph 52 of the Second Amended Complaint, constituted a failure to exercise reasonable care owed to the Plaintiff as Trustee of the Steffenberg's Trust.

## ANSWER NO. 12

Mrs. Steffenberg objects to Interrogatory No. 12 on the grounds that it seeks information protected by the attorney-client privilege and/or work product doctrine, and calls for a legal conclusion. Mrs. Steffenberg further objects to Interrogatory No. 12 on the grounds that it misstates the allegations contained Paragraph 52 of the Second Amended Complaint and is therefore unanswerable in its present form.

## SUPPLEMENTAL ANSWER NO. 12

Mrs. Steffenberg objects to Interrogatory No. 12 on the grounds that it misstates the allegations contained Paragraph 52 of the Second Amended Complaint dated May 3, 2004, and is therefore unanswerable in its present form.

Subject to and without waiving the foregoing objections, the objections set forth in Answer No. 12, and the General Objections, Mrs. Steffenberg refers to her Answers to Interrogatory Nos. 2, 4, 6, 8 and 9. Mrs. Steffenberg reserves the right to supplement her Answer to Interrogatory No. 12.

## Interrogatory No. 13

Describe in detail how the Defendant's simultaneous representation and role as Trustee and attorney-in-fact, all as alleged in paragraph 52 of the Second Amended Complaint, constituted a failure to exercise reasonable care owed to the Plaintiff as attorney-in-fact in the event of Mrs. Steffenberg's incapacity.

## ANSWER NO. 13

Mrs. Steffenberg objects to Interrogatory No. 13 on the grounds that it seeks information protected by the attorney-client privilege and/or work product doctrine, and calls for a legal conclusion. Mrs. Steffenberg further objects to Interrogatory No. 13 on the grounds that it misstates the allegations contained Paragraph 52 of the Second Amended Complaint, and is therefore unanswerable in its present form.

## SUPPLEMENTAL ANSWER NO. 13

Mrs. Steffenberg objects to Interrogatory No. 13 on the grounds that it misstates the allegations contained Paragraph 52 of the Second Amended Complaint dated May 3, 2004, and is therefore unanswerable in its present form.

Subject to and without waiving the foregoing objections, the objections set forth in Answer No. 13, and the General Objections, Mrs. Steffenberg refers to her Answers to Interrogatory Nos. 2, 4, 6, 8 and 9. Mrs. Steffenberg reserves the right to supplement her Answer to Interrogatory No. 13.

## Interrogatory No. 14

Describe in detail how the acts or omissions of the Defendant described in Count III of the Second Amended Complaint caused the Plaintiff to incur a loss, including but not limited to a description of what you believe the Defendant should have done differently at a particular point in time.

## ANSWER NO. 14

Mrs. Steffenberg objects to Interrogatory No. 14 on the grounds that it seeks information protected by the attorney-client privilege and/or work product doctrine, and calls for a legal conclusion.

## SUPPLEMENTAL ANSWER NO. 14

Subject to and without waiving the objections set forth in Answer No. 14 and the General Objections, Mrs. Steffenberg refers to her Answers to Interrogatory Nos. 2, 4, 6, 8 and 9. Mrs. Steffenberg reserves the right to supplement her Answer to Interrogatory No. 14.

## Interrogatory No. 15

Describe and identify by date, title and location any documents which form the basis for your allegations in paragraph 56 of the Second Amended Complaint that the Defendant agreed to exercise reasonable and prudent judgment and to act in good faith in his capacities as counsel to

the Steffenbergs, Trustee for the Trust and attorney-in-fact in the event of Mrs. Steffenberg's incapacity.

## ANSWER NO. 15

Mrs. Steffenberg objects to Interrogatory No. 15 on the grounds that it is overbroad, burdensome. Mrs. Steffenberg further objects to Interrogatory No. 15 on the grounds that it seeks information protected by the attorney-client privilege and/or work product doctrine, and calls for a legal conclusion.

Subject to and without waiving the foregoing objections and the General Objections, pursuant to Fed. R. Civ. P. 33(d), Mrs. Steffenberg refers Scoll to the Steffenberg File.

## SUPPLEMENTAL ANSWER NO. 15

Mrs. Steffenberg objects to Interrogatory No. 15 on the grounds that it misstates the allegations contained Paragraph 52 of the Second Amended Complaint dated May 3, 2004, and is therefore unanswerable in its present form.

Subject to and without waiving the foregoing objections, the objections set forth in Answer No. 15, and the General Objections, Mrs. Steffenberg refers to her Answers to Interrogatory Nos. 2, 4, 6, 8 and 9. Mrs. Steffenberg reserves the right to supplement her Answer to Interrogatory No. 15.

## Interrogatory No. 16

Identify the legal matter by description and date for which you allege the Plaintiff and Defendant had a binding agreement according to terms described in paragraph 56 of the Second Amended Complaint.

## ANSWER NO. 16

Mrs. Steffenberg objects to Interrogatory No. 16 on the grounds that it is overbroad and burdensome. Mrs. Steffenberg further objects to Interrogatory No. 16 on the grounds that it seeks information protected by the attorney-client privilege and/or work product doctrine, and calls for a legal conclusion. Mrs. Steffenberg also objects to Interrogatory No. 16 on the grounds that it misstates the allegations contained in paragraph 56 of the Second Amended Verified Complaint, and is therefore unanswerable in its present form.

## SUPPLEMENTAL ANSWER NO. 16

Mrs. Steffenberg objects to Interrogatory No. 16 on the grounds that it misstates the allegations contained in paragraph 56 of the Second Amended Verified Complaint dated May 3, 2004, and is therefore unanswerable in its present form.

Subject to and without waiving the foregoing objections, the objections set forth in Answer No. 16, and the General Objections, Mrs. Steffenberg refers to her Answers to Interrogatory Nos. 2, 4, 6, 8 and 9. Further answering, Mrs. Steffenberg states that Scoll's positions as attorney, Trustee, and attorney-in-fact for the Steffenbergs required him, at all times, to exercise reasonable and prudent judgment, to act loyally and in their best interests, to represent them zealously, and to fully and fairly disclose to them all facts material to their interests. Scoll was also bound to inform the Steffenbergs of any actual or potential conflicts of interest which might arise during the course of his representation of them. Mrs. Steffenberg reserves the right to supplement her Answer to Interrogatory No. 16.

## Interrogatory No. 17

Do you contend that the Defendant orally agreed to the terms alleged by you in paragraph 56 of the Second Amended Complaint? If your answer is yes, identify the location, time, date and persons present at the time of the oral agreement(s).

## ANSWER NO. 17

Mrs. Steffenberg objects to Interrogatory No. 17 on the grounds that it seeks information protected by the attorney-client privilege and/or work product doctrine, and calls for a legal conclusion. Mrs. Steffenberg further objects to Interrogatory No. 17 on the grounds that it misstates the allegations contained in Paragraph 56 of the Second Amended Verified Complaint, and is therefore unanswerable in its present form.

## SUPPLEMENTAL ANSWER NO. 17

Mrs. Steffenberg objects to Interrogatory No. 17 on the grounds that it misstates the allegations contained in Paragraph 56 of the Second Amended Complaint dated May 3, 2004, and is therefore unanswerable in its present form.

Subject to and without waiving the foregoing objections, the objections set forth in Answer No. 17, and the General Objections, Mrs. Steffenberg refers to her Answers to Interrogatory Nos. 2, 4, 6, 8, 9 and 16. Mrs. Steffenberg reserves the right to supplement her Answer to Interrogatory No. 17.

*INT # 18-25 = only Answers*

## Interrogatory No. 26

To the extent not already stated in your previous Answers, what should the Defendant have done or not have done which would have prevented your alleged damages?

## ANSWER NO. 26

Mrs. Steffenberg objects to Interrogatory No. 26 on the grounds that it seeks information protected by the attorney-client privilege and/or work product doctrine, and calls for legal conclusions. Mrs. Steffenberg further objects to Interrogatory No. 26 on the grounds that it exceeds the number of interrogatories permissible under Fed. R. Civ. P. 33(a).

## SUPPLEMENTAL ANSWER NO. 26

Subject to and without waiving the objections set forth in Answer No. 26 and the General Objections, Mrs. Steffenberg refers to her Answers to Interrogatory Nos. 2, 4, 6, 8, 9 and 16. Mrs. Steffenberg reserves the right to supplement her Answer to Interrogatory No. 17.

Signed under the pains and penalties of perjury this **23**<sup>rd</sup> day of December, 2004.

Elizabeth R. Steffenberg

AS TO OBJECTIONS:

Louis M. Ciavarra, Esquire (BBO #546481)
Christine S. Collins, Esquire (BBO #639293)
Bowditch & Dewey, LLP
311 Main Street
P.O. Box 15156
Worcester, MA  01615-0156
(508) 926-3441
(508) 929-3041

Dated: December **23**, 2004

## CERTIFICATE OF SERVICE

I, Christine S. Collins, hereby certify that I have this **23**<sup>rd</sup> day of December, 2004 served the foregoing by mailing copy thereof, via first class mail, postage prepaid, to the following:

Kristin M. Knuuttila, Esquire
Prince, Lobel, Glovsky & Tye, LLP
585 Commercial Street
Boston, MA 02109-1024

Sara Discepolo, Esquire
Wilson, Elser, Moskowitz, Edelman
& Dicker LLP
155 Federal Street
Boston, MA 02110

Christine S. Collins