## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

———————————————————— )
ELIZABETH R. STEFFENBERG,           )
                                    )
         Plaintiff,                 )
                                    )            **Civil Action No.**
         v.                         )            **04-40113-FDS**
                                    )
T. GENE GILMAN, STEVEN GILMAN,      )
THE GILMAN INSURANCE AGENCY,        )
INC., DAVID M. SCOLL, ARBOR         )
SECURITIES, LTD., ALLIANCE          )
INVESTMENT MANAGEMENT,              )
COMMONWEALTH FINANCIAL              )
HOLDINGS INC., FINANCIAL LINKS,     )
INC., T. GILMAN & CO., LTD., AVIVA  )
LIFE INSURANCE COMPANY,             )
TRADETEK, LTD., and TRADETEK, LLC,  )
                                    )
         Defendants.                )
                                    )
———————————————————— )

## <u>MEMORANDUM AND ORDER</u>

This action involves a claim that defendants are liable for the misappropriation of

approximately $1 million from retirement accounts and other investments owned by plaintiff

Elizabeth R. Steffenberg and her late husband, Arthur J. Steffenberg. Plaintiff alleges, among

other things, that T. Gene Gilman, the Steffenbergs' former financial advisor; his son and business

affiliate, Steven Gilman; and various corporations controlled by the Gilmans participated in a

scheme to defraud the Steffenbergs of their life savings. The complaint alleges claims against the

Gilmans and related defendants for breach of contract, fraud, intentional misrepresentation,

negligent misrepresentation, breach of fiduciary duty, negligence, conversion, and violation of

Mass. Gen. Laws ch. 93A.

Plaintiff also alleges that David M. Scoll, an attorney, simultaneously served as legal counsel to T. Gene Gilman and the Steffenbergs, and that he was aware of the scheme and wrongfully failed to reveal it to the Steffenbergs. Plaintiff asserts claims against Scoll for breach of fiduciary duty, breach of contract, and negligence. Finally, plaintiff asserts claims against Aviva Life Insurance Company ("Aviva"), apparently arising out of Gilman's alleged role as an agent for Aviva.

To date, only defendants Scoll and Aviva have filed an answer or responsive pleading to plaintiff's complaint. The Court entered a notice of default as to the remaining defendants on January 10, 2005. Plaintiff and Aviva have represented to the Court that they have reached a settlement agreement.

There are three matters currently pending before the Court for resolution.

First, pursuant to their settlement agreement, plaintiff and Aviva have jointly moved under Fed. R. Civ. P. 41(a)(2) to dismiss with prejudice all claims against Aviva Life Insurance Company and Aviva USA Corporation (the "Aviva Companies").[1] Scoll opposes that motion on grounds that he will suffer legal prejudice from the dismissal of Aviva from this litigation. Plaintiff and Aviva also request that Scoll be required to pay their costs and attorneys' fees as a sanction for his opposition to their motion to dismiss.

Second, plaintiff has moved for a default judgment against the T. Gene Gilman; Steven Gilman; the Gilman Insurance Agency, Inc.; Arbor Securities, Ltd.; Commonwealth Financial

---

[1] The complaint originally named Aviva USA Corporation, not Aviva Life Insurance Company. While the matter was pending in the Superior Court, plaintiff moved to amend her complaint to drop Aviva USA Corporation as a defendant and to substitute Aviva Life Insurance Company. That motion was apparently allowed, and Aviva USA Corporation was apparently dismissed from this action without prejudice. The Court interprets plaintiff's motion as to Aviva USA Corporation as a motion to convert that dismissal from one without prejudice to one with prejudice.

Holdings, Inc.; Financial Links, Inc.; T. Gilman & Co., Ltd.; Tradetek, Ltd.; and Tradetek, LLC (the "Gilman defendants"). Scoll also opposes that motion, arguing that the Court should delay entry of default judgment as to any party until all of plaintiff's claims have been decided on the merits.

Third, Scoll has filed an objection to the May 25, 2005 order of Magistrate Judge Swartwood. That order granted in part plaintiff's motion for reconsideration of a decision to compel the production of certain documents from Scoll, which Scoll contends are protected by ethical rules governing client confidentiality.

The Court will consider each matter in turn.

## I.    **The Motion to Dismiss**

Plaintiff and Aviva have jointly moved to dismiss with prejudice all of plaintiff's claims against the Aviva Companies pursuant to Fed. R. Civ. P. 41(a)(2). That Rule provides in part:

> An action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper. . . . Unless otherwise specified in the order, a dismissal under this paragraph is without prejudice.

The purpose of Rule 41(a)(2) "is to freely permit the plaintiff, with approval of the court, voluntarily to dismiss an action" so long as no other party will suffer legal prejudice. *Puerto Rico Maritime Shipping Auth'y v. Lerth*, 668 F.2d 46, 50 (1st Cir. 1981) (internal citations omitted); *Doe v. Urohealth Systems, Inc.*, 216 F.3d 157, 160 (1st Cir. 2000).[2] The District Court is responsible for exercising its discretion to ensure that such legal prejudice will not occur. *Doe*, 216 F.3d at 160. Where the plaintiff moves to dismiss an action with prejudice, the court, in the

---

[2] A court may dismiss an action as to fewer than all of the defendants because the word "action," as used in the Rule, has been construed to mean all claims against any one defendant. *Sullivan v. Bankhead Enterprises, Inc.*, 108 F.R.D. 378, 381 (D. Mass. 1985).

exercise of its discretion, must also bear in mind the practical and logistical difficulties inherent in compelling the plaintiff to pursue a claim she seeks to abandon. *See Shepard v. Egan*, 767 F. Supp. 1158, 1165 (D. Mass. 1990); *see also Smoot v. Fox*, 340 F.2d 301, 303 (6th Cir. 1969).

The gravamen of Scoll's opposition to the motion is his contention that dismissal with prejudice will extinguish any potential cross-claim for contribution he may wish to file against Aviva. That argument, however, cannot withstand analysis.

First, although this case has been pending for approximately seventeen months, Scoll has made no cross-claim of any kind.[3] Scoll cites no authority for the proposition that the mere possibility that he might – at some undefined time in the future – elect to file such a claim constitutes prejudice sufficient to deny a Rule 41(a)(2) motion. *Compare Chapman v. Bernard's Inc.*, 198 F.R.D. 575, 579 (D. Mass. 2001) (granting joint motion to dismiss with prejudice as to settling defendant where non-settling party had already filed a cross-claim against that defendant).

Furthermore, and in any event, even if Scoll had filed a contribution claim against Aviva, he would suffer no legally cognizable prejudice from the dismissal of plaintiff's claims against the company. Mass. Gen. Laws ch. 231B, § 4 provides:

> When a release or covenant not to sue or not to enforce judgment is given in good faith to one of two or more persons liable in tort for the same injury:
>
> (a) It shall not discharge any of the other tortfeasors from liability for the injury unless its terms so provide; but it shall reduce the claim against the others to the extent of

---

[3] Scoll attempts to blame Aviva for his failure to assert a cross-claim, asserting that it has refused to comply with its discovery obligations to him and the plaintiff. Scoll has not explained either how Aviva breached its discovery obligations or how the alleged breach prevented him from filing a contribution claim. In any event, Scoll propounded two requests for document production on Aviva in the course of this litigation; he has not noticed the company's deposition or served it with interrogatories. Aviva provided documents in response to each of Scoll's production requests on December 7, 2004, and on April 8, 2005. If Scoll believed that Aviva improperly withheld discoverable information, he should have sought appropriate relief from the Court.

> any amount stipulated by the release or covenant, or in the amount of consideration paid for it, whichever is the greater; and
>
> (b) It shall discharge the tortfeasor to whom it is given from all liability to any other tortfeasor.

Under this statute—which is intended to promote settlement—a co-defendant is discharged from a cross-claim for contribution if it has reached a settlement with the plaintiff in good faith. *Bishop v. Klein*, 380 Mass. 285, 293-294 (1980); *Noyes v. Raymond*, 28 Mass. App. Ct. 186, 188-189 (1990). The statute itself does not define good faith, and Massachusetts courts have not set forth a comprehensive definition of the term. *See Noyes*, 28 Mass. App. Ct. at 188-189. At a minimum, the settling parties must not have arrived at their agreement through "collusion, fraud, dishonesty, and other wrongful conduct." *Id.* at 190; *Chapman*, 198 F.R.D. at 577.

The party relying upon a settlement in seeking to be discharged has the initial burden of establishing good faith. *Noyes*, 28 Mass. App. Ct. at 191. That burden is satisfied simply by showing that a settlement has been agreed upon and describing its nature and terms. *Id.*; *Chapman*, 198 F.R.D. at 578. The burden of production and persuasion then shifts to the non-settling party; if that party raises a legitimate issue of lack of good faith, it is entitled to an evidentiary hearing on the issue. *Noyes*, 28 Mass. App. Ct. at 191; *Chapman*, 198 F.R.D. at 578. However, in keeping with "[t]he goal of encouraging settlements . . . motions for discharge based upon settlements are routinely allowed, with extended hearings on the question of good faith the exception." *Noyes*, 28 Mass. App. Ct. at 189; *Chapman*, 198 F.R.D. at 578 ("it is difficult to prove a lack of good faith").[4]

---

[4] "If it were otherwise, a party seeking to avoid trial by settling a claim could rarely achieve that objective; either the issue of good faith would be the subject of a full trial or . . . a defendant who settles with a plaintiff may, nevertheless, be forced to stand trial on the merits of the tort claim. Faced with such prospects, a defendant would

Here, the plaintiff and Aviva have represented to the Court that they have reached a settlement; they have also generally described the nature and terms of their agreement. The burden therefore rests with Scoll to demonstrate a genuine issue as to whether the plaintiff and Aviva acted in good faith.

Scoll argues that the refusal of the settling parties to provide him with a copy of the agreement evidences bad faith on their part. No such refusal occurred; in fact, plaintiff and Aviva notified Scoll of the settlement agreement, informed him that it contains a confidentiality clause, and offered to furnish him with a copy of the agreement on the condition that he and his attorneys promise to maintain its confidentiality. Scoll and his attorneys have apparently refused to accede to that condition. Scoll thus has not been *denied* access to the agreement; he has been granted it, but on terms he elects not to accept.

Furthermore, and in any event, settling parties need not produce a copy of their agreement to a hold-out defendant in order to comply with their good faith obligations, particularly where the agreement contains a confidentiality clause. *See Chapman*, 198 F.R.D. at 578 (noting that production of the agreement was *sufficient* to establish the initial burden); *Cf. Slocum v. Donahue*, 44 Mass. App. Ct. 937, 938 (1998) (no lack of good faith simply because settlement negotiations proceeded without the participation of the non-settling defendants). Indeed, such a mandate would be contrary to the principle that the settling parties need only describe the nature and terms of their agreement in order to shift the burden on the issue of good faith. *See Noyes*, 28 Mass. App. Ct. at 191; *Chapman*, 198 F.R.D. at 578.

Scoll has proffered no other evidence or argument to satisfy his burden of coming forward

---

have little incentive to enter into a settlement." *Noyes*, 28 Mass. App. Ct. at 189-190.

6

with some showing of lack of good faith. *See Noyes*, 28 Mass. App Ct. at 191. Speculation as to the motives of the settling parties is plainly insufficient to trigger the right to a hearing. *See Slocum*, 44 Mass. App. Ct. at 939 (observing that speculation does not trigger the necessity for an extensive hearing on the issue of good faith); *Noyes*, 28 Mass. App. Ct. at 191 (evidentiary hearings on good faith should "tak[e] place only in rare instances"); *Chapman*, 198 F.R.D. at 578. Scoll has thus failed to meet his burden of demonstrating bad faith.

In summary, even if Scoll had lodged a cross-claim for contribution against Aviva, which he has not, Aviva would nonetheless be entitled to discharge from liability on that claim and from this litigation pursuant to Mass. Gen. Laws ch. 231B, § 4. Accordingly, because Scoll cannot demonstrate that he will suffer legal prejudice, the joint motion to dismiss under Rule 41(a)(2) will be granted.[5]

The Court will, however, deny the request of plaintiff and Aviva that Scoll be required to pay their costs and attorneys' fees in connection with that motion. They cite no case law in support of this request, and have introduced no evidence that Scoll opposed their motion in bad faith or for an improper purpose. Under the circumstances, the Court sees no reason to impose sanctions.

## II.    **The Motion for Default Judgment**

Plaintiff has moved for a default judgment against the Gilman defendants, none of whom have answered the complaint or otherwise appeared. There is no dispute that plaintiff has met the

---

[5] Under Mass. Gen. Laws ch. 231B, § 4(a), Scoll will be entitled, as a non-settling defendant, to a reduction in liability to the plaintiff "to the extent of any amount stipulated by the release or covenant [with Aviva], or in the amount of consideration paid for it, whichever is the greater."

procedural prerequisites for a default judgment against these defendants: each was served with a copy of the complaint, each has failed to file an answer or responsive pleading, and the Court has issued a notice of default as to each. *See* Fed. R. Civ. P. 55(a). Nonetheless, Scoll opposes the entry of default judgment against his co-defendants, arguing, in substance, that "the preferred practice" is to withhold default judgment against any one defendant until the entire action has been adjudicated on the merits.[6]

Fed. R. Civ. P. 54(b) affords the district court discretion to enter a default judgment against fewer than all of the defendants in a given case. The rule provides in part as follows:

> . . . when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

"The basic purpose of Rule 54(b) is to avoid the possible injustice of a delay in entering judgment on a distinctly separate claim or as to fewer than all of the parties until final adjudication of the entire case by making an immediate appeal available." C. WRIGHT, A. MILLER, & M. KANE, FEDERAL PRACTICE AND PROCEDURE: CIVIL § 2654 at 33 (3d ed. 1998). In deciding whether to enter final judgment pursuant to Rule 54(b), the district court may consider, among other things, the need for partial final judgments in complex modern civil actions; the possibility that defaulters might conceal or transfer assets subject to execution; and the seriousness of the charges in the

---

[6] There is substantial doubt as to whether Scoll has standing to oppose entry of default judgment against the other defendants. Neither he nor the plaintiff have expressly argued that he is jointly liable for their conduct, and he has not otherwise attempted to demonstrate that he will sustain "injury in fact" should the Court enter judgment against them. *Compare Sack v. Seid*, 2002 U.S. Dist. LEXIS 20542, *5 (N.D. Cal. 2002) (non-defaulting defendant opposed motion for default judgment against co-defendants; because plaintiff alleged that non-defaulting defendant and other defendants "acted jointly, together . . . and as each other's agents," and non-defaulting defendant "could be ordered to pay full satisfaction of a damage award," he "had an injury in fact and standing to challenge the entry of a default [judgment]" against the other defendants).

complaint, together with the willful and deliberate avoidance of those charges by the defaulting

defendants.  *See In re Uranium Antitrust Litigation*, 617 F.2d 1248, 1252-1253 (7th Cir. 1980);

*see also* WRIGHT & MILLER § 2656 at 45 ("The court is given power to enter a final judgment as

to less than all the claims or parties to an action, if it decides that the ends of justice so require").


In *Frow v. De La Vega*, 82 U.S. 552 (1872), which involved a claim of joint conspiracy to

defraud the plaintiff, the Supreme Court held that judgment should not have been entered against

a defaulting defendant until the matter had been adjudicated with regard to all defendants or all

defendants had defaulted.  *Id.* at 554.  The Court reasoned:

> If the court in a case such as this can lawfully make a final decree against one
> defendant separately, on the merits, while the cause was proceeding undetermined
> against the others, then this absurdity might follow:  there might be one decree of the
> court sustaining the charge of joint fraud committed by the defendants; and another
> decree disaffirming the said charge, and declaring it to be entirely unfounded, and
> dismissing the complainant's bill . . . . Such a state of things is unseemly and absurd,
> as well as unauthorized by law.

*Id.*

Although *Frow* was handed down in a case in which the plaintiff expressly alleged joint

liability, some courts have extended the holding to situations where similarly-situated defendants

assert closely-related defenses, although they are not alleged to be jointly liable.  *See, e.g., Gulf

Coast Fans, Inc. v. Midwest Electronics Importers, Inc.*, 740 F.2d 1499, 1512 (11th Cir. 1984);

*Northland Insurance Co. v. Cailu Title Corp.*, 204 F.R.D. 327, 330 (W.D. Mich. 2000).  The

*Frow* principle "is designed to apply only when it is necessary that the relief against the defendants

be consistent.  If that is not the case, then a default [judgment] against one defendant may stand,

even though the remaining defendants are found not liable."  WRIGHT & MILLER § 2690 at 77; *see*

*also Farzetta v. Turner & Newall, Ltd.*, 797 F.2d 151, 154 (3d Cir. 1986) ("*Frow* stands for the proposition that if at trial facts are proved that exonerate certain defendants and that as a matter of logic preclude the liability of another defendant, the plaintiff should be collaterally estopped from obtaining a judgment against the latter defendant, even though it failed to participate in the proceeding in which the exculpatory facts were proved"); *International Controls Corp. v. Vesco*, 535 F.2d 742, 746 & n.4 (2d Cir. 1976) (*Frow* controls only "in situations where the liability of one defendant necessarily depends upon the liability of the other"); *In re Uranium Antitrust Litigation*, 617 F.2d at 1257 ("the result in Frow was clearly mandated by the Court's desire to avoid logically inconsistent adjudications as to liability"); *Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995, 1008 (N.D. Cal. 2001) ("*Frow*'s applicability turns not on labels such as 'joint liability' or 'joint and several liability,' but rather on the key question of whether under the theory of the complaint, liability of all the defendants must be uniform").

Here, plaintiff claims that the Gilman defendants participated in a scheme to defraud her and her husband of their life savings. The crux of her action against Scoll is the contention that he knew of the other defendants' fraudulent scheme and breached his fiduciary and contractual duties to the Steffenbergs by failing to alert them. Plaintiff does not expressly allege that Scoll and the defaulting defendants are jointly liable.

Under these circumstances, a judgment for the plaintiff against the defaulting defendants would not necessarily be inconsistent with a verdict for Scoll, should the claims against him proceed to trial. For example, it would be logical for a jury to conclude that the Gilman defendants participated in a scheme to steal from the plaintiff and her husband, but that Scoll knew nothing of their fraudulent activity. A jury could also logically decide that the fraud

10

occurred, and that Scoll knew of it, but was under no fiduciary or other duty to inform the Steffenbergs of it. *See Shanghai Automation*, 194 F. Supp. 2d at 1009; *Farzetta*, 797 F.2d at 155.

Therefore, because differing judgments may be easily reconciled in this case, *Frow* does not control, and the Court retains discretion to enter a default judgment against fewer than all of the defendants. *See Carter v. District of Columbia*, 795 F.2d 116, 137-138 (D.C. Cir. 1986) (distinguishing *Frow* because divergent outcomes could be reconciled). This is an appropriate case in which to exercise such discretion. The allegations of the complaint are unquestionably serious—the theft of an elderly couple's life savings—and the defaulting defendants have failed to respond to the complaint or otherwise enter an appearance in this case for more than a year and a half. This litigation is also relatively complex; it involves sixteen parties and multiple causes of action. The entry of a partial final judgment would ameliorate any injustice that might result from requiring the plaintiff to wait for what could well be a period of many years until final adjudication of the entire case on the merits. In addition, there is a substantial amount (approximately $1 million) at stake, and a possibility that one or more of the defaulting defendants will attempt to conceal or transfer assets that could be used to satisfy a judgment for the plaintiff. That consideration is particularly compelling in this case, given the Gilmans' history of running their financial operations through a maze of business entities scattered throughout the country and in off-shore locations. *See In re Uranium Antitrust Litigation*, 617 F.2d at 1252-1253; *Shanghai Automation*, 194 F. Supp. 2d at 1004-05, 1009-10.

Accordingly, plaintiff's motion for a default judgment against the Gilman defendants will be granted.

III.    **Objection to the Decision of the Magistrate Judge**

Scoll has filed a timely objection under 28 U.S.C. § 636(b)(1)(A) and Fed. R. Civ. P. 72(a) to an order issued by Magistrate Judge Swartwood on May 25, 2005. That order granted in part and denied in part plaintiff's motion for reconsideration of an earlier decision denying plaintiff's motion to compel Scoll to produce documents relating to his dealings with the Gilman defendants. Before addressing the merits of Scoll's objection, the Court will briefly describe its somewhat unusual background and procedural history.

A.    **Background and Procedural History**

In May 2004, plaintiff served Scoll with a request for production of documents relating to the Gilman defendants. Scoll refused to produce these documents, asserting various evidentiary privileges, including the attorney-client privilege, and the joint defense and work product doctrines. He also submitted a lengthy privilege log to the Court.

On August 27, 2004, plaintiff filed a motion to compel Scoll to produce the documents itemized in the privilege log. The Court referred that motion to the Magistrate Judge. On December 28, 2004, the Magistrate Judge entered an order denying the motion to compel on grounds that the documents were protected under the attorney-client privilege and the work product and joint defense doctrines.

On February 2, 2005, plaintiff filed a motion for reconsideration of the December 28 order, arguing that it was premised upon an erroneous interpretation and application of the attorney-client privilege and work product doctrine. The plaintiff did not specify whether that

12

motion was directed to the undersigned Judge or to the Magistrate Judge.[7]  Scoll filed an

opposition memorandum on February 23, in which he asserted, among other things, that the

Magistrate Judge correctly applied the relevant privilege law in his December 28 order.  He did

not argue that the plaintiff's motion for reconsideration should be denied as untimely or for any

other procedural reason.

The Court referred the plaintiff's motion for reconsideration to the Magistrate Judge.  On

May 25, the Magistrate Judge issued an order upholding the applicability of the attorney-client

privilege to certain documents in the privilege log, but reversing his remaining rulings on the

applicability of the joint defense and work product doctrines to other documents.  The Magistrate

Judge further directed the parties to appear at a hearing on June 13, 2005, at which he would

review each document in the privilege log, and make a final ruling as to which documents be

disclosed in light of his May 25 order.  The Magistrate Judge's decision did not identify any

procedural defect in the plaintiff's motion for reconsideration.

On June 3, 2005, Scoll filed an unopposed motion directed to the Magistrate Judge to stay

the May 25 order.[8]  Six days later, the Magistrate Judge granted Scoll's motion for a stay and

postponed the hearing scheduled for June 13 pending further ruling on the matter by this Court.

Also on June 3, Scoll appealed the Magistrate Judge's May 25 order to this Court by filing

---

[7] The motion states, in relevant part: "Plaintiff . . . submits this Motion for Reconsideration of the Court's (Swartwood, J.) Order denying her Motion to Compel Responses of David M. Scoll to Plaintiff's First Request for Production of Documents, dated December 28, 2004 . . ."  *See* Docket # 34.

[8] Rule 2(c) of the Local Magistrate Judge Rules provides in part as follows:

Any party desiring a stay of the magistrate judge's ruling or order, or any part thereof, pending ruling on objections filed under subsection (b) hereof, must first apply therefor to the magistrate judge from whose ruling the objection is taken.

a timely objection pursuant to 28 U.S.C. § 636(b)(1)(A) and Fed. R. Civ. P. 72(a). The principal

basis for Scoll's objection is procedural: he claims that plaintiff waived her right to challenge the

Magistrate Judge's December 28 order because she did not file her motion for reconsideration by

the 10-day deadline prescribed in Fed. R. Civ. P. 72(a). Alternatively, Scoll argues that the

Magistrate Judge committed a legal error in the May 25 decision, and that the Court must

therefore set aside the decision pursuant to Fed. R. Civ. P. 72(a). Specifically, Scoll contends that

the order was based exclusively on consideration of the documents as privileged, and that the

Magistrate Judge erroneously failed to consider Scoll's objections based upon Rule 1.6 of the

Massachusetts Rules of Professional Conduct.

The Court will consider Scoll's procedural and substantive arguments in turn.

## B.    The Procedural Argument

Because the Magistrate Judge's May 25 order involved a pretrial matter "not dispositive

of a claim or defense of a party," it is governed by 18 U.S.C. § 636(b)(1)(A) (and by Fed. R Civ.

P. 72(a) and Rule 2 of the Local Magistrate Judge Rules, which implement the statute). Section

636(b)(1)(A) provides:

> A judge may designate a magistrate judge to hear and determine any pretrial matter
> pending before the court, except [certain motions not relevant here]. A judge of the
> court may reconsider any [such] pretrial matter . . . where it has been shown that the
> magistrate judge's order is clearly erroneous or contrary to law.

Rule 72(a) provides, among other things, that:

> . . . Within 10 days after being served with a copy of the magistrate judge's order, a
> party may serve and file objections to the order; a party may not thereafter assign as
> error a defect in the magistrate judge's order to which objection was not timely made.
> The district judge to whom the case is assigned shall consider such objections and
> shall modify or set aside any portion of the magistrate judge's order found to be
> clearly erroneous or contrary to law.

14

Finally, Rule 2 of the Local Magistrate Judge Rules provides, among other things, that:

> The ruling or order of a magistrate judge in a matter that is heard and determined under subsection (a) hereof [governing non-dispositive pretrial matters] is the ruling of the Court and is final unless reversed, vacated or modified by the district judge as provided in Fed. R. Civ. P. 72(a) . . .

Local Magistrate Judge Rule (2)(c).

If a party fails to make a timely objection to the magistrate judge's ruling under Rule 72(a), he waives the right to review of the ruling by the district court. WRIGHT & MILLER § 3069 at 348-49; *Sunview Condominium Ass'n v. Flexel Int'l, Ltd.*, 116 F.3d 962, 964 (1st Cir. 1997). Such a party also forfeits its right to challenge any aspect of the magistrate judge's ruling before the court of appeals. WRIGHT & MILLER § 3069 at 349; *Pagano v. Frank*, 983 F.2d 343, 346 (1st Cir. 1993).[9]

Although Rule 72(a) prescribes a ten-day deadline for appealing the magistrate judge's decision on non-dispositive matters to the *district court*, it does not necessarily prevent the *magistrate judge* from reconsidering his or her own rulings on such matters, even after the passage of ten days. *See* WRIGHT & MILLER § 3069 (2005 pocket part) at 37 (describing the ten-

---

[9] However, "[b]ecause the rule is a nonjurisdictional waiver provision," the district court or the court of appeals may, "in the interests of justice," excuse a party's failure to file an objection within the allotted time period. *Thomas v. Arn*, 474 U.S. 140, 155 & n.15 (1985) ("We need not decide at this time what standards the court of appeals must apply in considering exceptions to their waiver rules"); *see Rodriguez v. Bowen*, 857 F.2d 275, 276-277 (5th Cir. 1988) (district court had discretion to consider late filing of objection to magistrate judge's report); *Hunger v. Leininger*, 15 F.3d 664, 668 (7th Cir. 1996); *Continental Casualty Co. v. D'Andrea, Inc.*, 150 F.3d 245, 253 (3d Cir. 1998); *Anderson v. Hale*, 159 F. Supp. 2d 1116, 1117 (N.D. Ill. 2001).

The district court may also implicitly extend the deadline prescribed in Rule 72(a) by considering a party's objection even though it is filed late. *See Nabors v. United States*, 929 F.2d 354, 355 (8th Cir. 1990) (although the party did not file his objections within ten days, the government did not object to them as untimely, and district court considered them, despite the late filing; "under these circumstances, the time for filing may be considered to have been extended implicitly"); *Patterson v. Mintzes*, 717 F.2d 284, 288 (6th Cir. 1983) (court considered 10-day filing deadline to have been implicitly enlarged where district court considered untimely objections).

day period for filing objections with the district judge, but also noting that "it is within the magistrate judge's discretion to reconsider his or her own rulings"); *Chase Manhattan Bank v. Iridium Africa Corp.*, 294 F. Supp. 2d 634, 637 (D. Del. 2003) ("[w]hile [Rule 72] provides a ten day period for a party to object to a magistrate judge's order, the rule does not circumscribe a magistrate judge's ability to conduct the proceedings before him or her . . . . it was within the Magistrate Judge's discretion to reconsider her own rulings"); *Schartz v. Unified School District No. 512*, 963 F. Supp. 1067, 1070 (D. Kan. 1997).

The First Circuit has likewise suggested that a party who fails to lodge a timely objection to an adverse decision pursuant to Rule 72(a) may nonetheless attempt to seek recourse through a motion for reconsideration directed to the magistrate judge.  *See Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 605 (1st Cir. 1980) (noting that "[t]he remedy, if any, of a dissatisfied party who failed to object [to the magistrate judge's decision on a non-dispositive matter] should be by way of a motion for reconsideration disclosing the grounds"); *cf. Philips v. Raymond Corp.*, 213 F.R.D. 521, 525 (N.D. Ill. 2003) ("rulings on discovery . . . whether made by the Magistrate Judge without later District Judge review, or even by the District Judge himself or herself, are not dispositive rulings in any sense.  If it is true (and of course it is) that a District Judge is free at any time to reexamine such interlocutory discovery . . . rulings of his or her own . . . it would turn the jurisprudential system on its head to ascribe irrevocably finality (akin to that of a final judgment) to any unreviewed discovery . . . rulings of the Magistrate Judge").[10]

---

[10] Arguably, Local Magistrate Judge Rule 2(c) forecloses motions for reconsideration, because it states that the "ruling or order of a magistrate judge [on a non-dispositive pretrial matter] is the ruling of the Court and is final" unless modified or overturned by the district court under Fed. R. Civ P. 72(a).  However, the Local Rule does not expressly prohibit the magistrate judge from reconsidering his or her own rulings, and the Court declines to give the rule such a drastic interpretation.

Here, there is no dispute that the plaintiff filed her motion on February 2, more than ten days from the issuance of the December 28 order. She did not specifically indicate whether the motion was directed to the undersigned Judge or to the Magistrate Judge. However, it was styled a "motion for reconsideration," rather than an "objection" or an "appeal," and did not cite Rule 72(a) or § 636(b)(1)(A), or even mention the district court's power to review and vacate or modify a magistrate judge's order. Therefore, this Court deemed it a motion for reconsideration directed to the Magistrate Judge, rather than an application for district court review governed by Rule 72(a) and, accordingly, referred it to the Magistrate Judge. *See* 28 U.S.C. § 636(b)(1)(A).

Plaintiff's motion for reconsideration was filed well before the close of discovery or the filing of a dispositive motion by Scoll. *Compare Schartz*, 963 F. Supp. at 1070 (plaintiff's challenge to the magistrate judge's ruling on a motion to compel was untimely where it was filed after the district court had granted summary judgment in defendant's favor and plaintiff had not previously filed a motion for reconsideration or objections under Rule 72(a)). Moreover, nowhere in his eight-page opposition memorandum did Scoll object to the plaintiff's motion on procedural grounds or claim to have been prejudiced in any way by the timing of the motion. Indeed, it was only after the Magistrate Judge issued a partial ruling in plaintiff's favor that Scoll argued that the motion should have been treated as an objection or appeal to the District Court that was time-barred under Rule 72(a).

Under the circumstances, it was clearly within the discretion of the Magistrate Judge to reconsider his own ruling. *Cf. Hunger*, 15 F.3d at 668 (where objection was not "egregiously late" and the other party was not prejudiced by the late filing, the lower court should have considered the objections); *Nabors*, 929 F.3d at 355 (opposing party did not object to untimely

17

objections, and district court considered them).  The Court will not, therefore, disturb the May 25

order based on the timeliness or other procedural grounds.

>    2.    **The Substantive Argument**

Under Rule 72(a), the district court may set aside any portion of the order that is "clearly

erroneous or contrary to law."  Fed. R. Civ. P. 72(a).  This standard makes it "extremely difficult

to justify alteration of the magistrate judge's non-dispositive actions by the district judge."

Wright & Miller § 3069, at 350-351; *Phinney v. Wentworth Douglas Hospital*, 199 F.3d 1, 4

(1st Cir. 1999) (explaining that the magistrate judge's ruling on a non-dispositive matter must be

upheld unless, "after scrutinizing the entire record, [the district judge] form[s] a strong, unyielding

belief that a mistake has been made") (citations omitted); *United States v. Mehta*, 236 F. Supp. 2d

150, 154 (D. Mass. 2002) ("district court should only overturn a magistrate's order when left

with the definite and firm conviction that a mistake has been made").

Here, Scoll proffers a single substantive objection to the Magistrate Judge's decision:  he

argues that the Magistrate Judge erred by failing to take account of Massachusetts Rule of

Professional Conduct 1.6, which, he maintains, provides an independent basis for denying the

plaintiff access to the documents in the privilege log.  He further contends that "[t]he privilege log

sufficiently demonstrates that the attorney matter files in question are confidential" under Rule

1.6, and therefore not subject to discovery by the plaintiff.

Lawyers appearing before the United States District Court for the District of

Massachusetts are generally required to adhere to the Massachusetts Rules of Professional

Conduct.  United States District Court Local Rule 83.6(4)(B); *Inverness Medical Switzerland

GMBH v. Acon Laboratories, Inc.*, 2005 U.S. Dist. Lexis 12332, *10-*11 (D. Mass. 2005).  Rule

1.6 of the Rules of Professional Conduct provides in relevant part:

> A lawyer shall not reveal confidential information relating to representation of a client unless the client consents after consultation, except for disclosures that are impliedly authorized in order to carry out the representation, and except as stated in paragraph (b).[11]

The commentary to Rule 1.6 states:

> The principle of confidentiality is given effect in two related bodies of law, the attorney-client privilege (and the related work product doctrine) in the law of evidence and the rule of confidentiality established in professional ethics.  The attorney-client privilege applies in judicial and other proceedings in which a lawyer may be called as a witness or otherwise required to produce evidence concerning a client.  The rule of client-lawyer confidentiality applies in situations *other than those* where evidence is sought from the lawyer through compulsion of law.

Mass. R. Prof. Conduct 1.6, comment 5 (emphasis added).  It is obvious that Rule 1.6 is designed to serve a separate function from evidentiary privileges, and that a lawyer's refusal to produce information relating to a client implicates the law of evidence, rather than the ethical duty of confidentiality.  *See Callahan v. Nystedt*, 641 A.2d 58, 62 (R.I. 1994) (attorney sought to prevent discovery of his files under Rule 1.6 of the Rhode Island Rules of Professional Conduct; "[t]he rule does not alter or expand the scope of the attorney-client privilege, nor does it provide an alternative source of protection against disclosure when no such protection exists under the attorney-client privilege").[12]

---

[11] The exceptions listed in paragraph (b) do not appear to have any relevance to the present matter.

[12] Scoll contends that Fed. R. Civ. P. 26(b)(5) supports his argument that Rule 1.6 should operate to deny the plaintiff access to the requested documents.  Rule 26(b)(5) provides:

> When a party withholds information otherwise discoverable under these rules by claiming that it is privileged or subject to protection as trial preparation material, the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection.

19

Here, the Magistrate Judge's decision dealt with plaintiff's motion to compel Scoll to produce documents relating to his legal representation of the Gilmans defendants. The Magistrate Judge therefore properly analyzed the motion under evidentiary doctrines, rather than Rule 1.6 of the Rules of Professional Conduct. Scoll's objection to the May 25 order is therefore denied, and the order is affirmed.

## Order

For the reasons stated in the foregoing memorandum, the Court hereby ORDERS the following:

(1)     The joint motion of plaintiff and Aviva Life Insurance Company and Aviva USA Corporation to dismiss all claims against the Aviva companies with prejudice under Fed. R. Civ. P. 42(a)(2) is GRANTED, the parties to bear their own costs and attorneys fees in connection with that motion;

(2)     Plaintiff's motion for a default judgment against T. Gene Gilman, Steven Gilman, the Gilman Insurance Agency, Inc., Arbor Securities, Ltd., Commonwealth Financial Holdings, Inc., Financial Links, Inc., T. Gilman & Co. Ltd., Tradetek, Ltd., and Tradetek, LLC is GRANTED; and

(3)     The May 25, 2005 decision of Magistrate Judge Swartwood on plaintiff's motion for reconsideration is AFFIRMED.

---

Although it is not entirely clear, Scoll appears to argue that the phrases "privilege or protection" and "privileged or protected" should be construed to mean "evidentiary privileges and doctrines or other protections, such as those provided by the Rules of Professional Conduct."

However, the phrases "privilege or protection" and "privileged or protected" are clearly used in the rule as shorthand for information that a party claims is "privileged or subject to protection *as trial preparation material*." Fed. R. Civ. P. 26(b)(5) (emphasis added). Thus, Rule 26(b)(5), does not suggest that Rule 1.6, or any other ethical cannon, may be invoked to bar discovery of non-privileged information.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge

Dated:   September 13, 2005